No. 14-1350

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Kennametal Inc.,

Appellant,

v.

Ingersoll Cutting Tool Company,

Appellee.

Appeal from the Patent Trial and Appeal Board
of the United States Patent and Trademark Office
Appeal No.  2013-001102
*Inter Partes* Reexamination No. 95/001,417

## BRIEF OF APPELLANT KENNAMETAL INC.

Steven D. Moore
J. Jason Link
N. Dean Powell Jr.
Kilpatrick Townsend & Stockton LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7431
smoore@kilpatricktownsend.com
jlink@kilpatricktownsend.com
dpowell@kilpatricktownsend.com

May 12, 2014                    *Counsel for Appellant*

# CERTIFICATE OF INTEREST

Counsel for Kennametal Inc. certifies the following:

1.      The full name of every party represented by us is:

Kennametal Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

None.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

None.

4.      The names of all law firms and the partners or associates that appear for the party now represented by me in the trial court or agency or are expected to appear in this court are:

Steven D. Moore, J. Jason Link, and N. Dean Powell Jr.

Kilpatrick Townsend & Stockton LLP, 1001 W. Fourth St., Winston-Salem, NC  27101

Dated:  May 12, 2014           /s/*Steven D. Moore*_____
                                    Steven D. Moore

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ......................................................................v

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF JURISDICTION.........................................................2

ISSUES PRESENTED ON APPEAL........................................................2

STATEMENT OF THE CASE..................................................................3

STATEMENT OF FACTS ........................................................................5

     I.     The '519 Patent Describes a Novel and Non-Obvious
           PVD-Coated Cutting Tool That Includes A Ruthenium
           Binder. ............................................................................................5

           A.     Introduction to Technology.......................................................5

           B.     State of the Art at Time of Invention of the '519
                  Patent.........................................................................................7

           C.     Overview of the '519 Patent Specification................................8

           D.     Overview of Pending Claims ...................................................10

     II.     Summary of Proceedings Involving the '519 Patent ..........................12

           A.     Federal District Court Litigation.............................................12

           B.     *Inter Partes* Reexamination .....................................................13

                  1.     Prior Art at Issue in Reexamination
                            Proceeding ....................................................................13

a.  Grab – U.S. Patent No. 7,244,519 (A58-A67) ............................................................ 13

b.  Leverenz – U.S. Patent No. 6,214,247 (A88-A119) ........................................................ 14

c.  Additional Prior Art Used in Obviousness Rejections ........................................ 15

2.  Prosecution History of *Inter Partes* Reexamination ............................................... 16

a.  October 22, 2010 Office Action ........................... 16

b.  Response to October 22, 2010 Office Action ................................................................ 17

c.  Action Closing Prosecution and Responses ............................................................. 18

d.  Right of Appeal Notice ("RAN") ......................... 19

C.  PTAB Decision on Appeal and Request for Rehearing ................................................................ 20

III.  Summary of Pending Claim Rejections ............................. 21

SUMMARY OF ARGUMENT ................................................................ 23

ARGUMENT ................................................................................ 25

I.  Standard of Review ................................................................ 25

II.  The PTAB Erred When It Reversed the Examiner and Rejected the Claims as Anticipated by Grab ........................ 27

A.  Grab Fails to Disclose the Claimed Invention in the Same Way as Claimed in the '519 Patent ........................... 28

B.  The PTAB's Reliance on *In re Petering* is Erroneous ................................................................ 30

1.      Summary of *In re Petering* .............................................31

2.      The Broad List of Options in Grab Does Not
        Disclose Particular Limited Circumstances
        Characteristic of *Petering* ...............................................33

3.      Grab Discloses Many Different
        Embodiments – Not a "Definite and Limited
        Set" of 15 Choices. .........................................................36

III.    The PTAB Erred in Rendering the Dependent Claims as
        Obvious ........................................................................42

A.      Claims 1, 15, and 83 Were Only Held To Be
        Anticipated by Grab .....................................................42

B.      The PTAB has not properly established a *prima
        facie* case of obviousness. ...........................................43

C.      The PTAB Erred in Affirming the Rejections of
        Dependent Claims Because It Failed to Consider
        Evidence of Secondary Considerations ....................45

1.      Legal Standard ...............................................46

2.      Summary of Certain Secondary
        Considerations ...............................................47

3.      Failure to Consider Secondary
        Considerations for Rejection of Independent
        Claim Prevents Finding of Obviousness of
        Dependent Claims...........................................48

CONCLUSION .........................................................................50

# TABLE OF AUTHORITIES

## Cases

*ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012)................................................................ 36, 42

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629 (Fed. Cir. 2011) ...............26

*Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325 (Fed. Cir. 2013) ......................27

*Connell v Sears, Roebuck & Co.*, 722 F.2d 1542 (Fed. Cir. 1983) .................. 26, 28

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010)......................46

*Dickinson v. Zurko*, 527 U.S. 150 (1999) .................................................25

*Eli Lilly & Co. v. Zenith Goldine Pharms., Inc.*, 471 F.3d 1369 (Fed. Cir. 2006) ................................................................ 36, 42

*Eurand, Inc. v. Mylan Pharm. Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.)*, 676 F.3d 1063 (Fed. Cir. 2012) ................................................... 27, 46

*Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731 (Fed. Cir. 2013)............. 26, 27

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ................................... 26, 46

*Hartness Int'l Inc. v. Simplimatic Eng'g. Co.*, 819 F.2d 1100 (Fed. Cir. 1987) .................................................................49

*Impax Labs., Inc. v. Aventis Pharm.*, 468 F.3d 1366 (Fed. Cir. 2006)...................30

*In re Arkley*, 455 F.2d 586 (CCPA 1972) .................................................29

*In re Deuel*, 51 F.3d 1552 (Fed. Cir. 1995) ...................................... 36, 42

*In re Fine*, 837 F.2d 1071 (Fed. Cir. 1988) ............................................49

*In re Hyon*, 679 F.3d 1363 (Fed. Cir. 2012) ...........................................27

*In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000) ................................... 25, 27

v

*In re Oelrich*, 666 F.2d 578 (C.C.P.A. 1981) ..........................................26

*In re Petering*, 301 F.2d 676 (CCPA 1962).................................... passim

*In re Ruschig,* 343 F.2d 965 (C.C.P.A. 1965)............................. 35, 37, 41

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ........................ 27, 43

*Levengood*, 28 USPQ2d 1300 (BPAI 1993).............................................43

*Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012).............................46

*Net MoneyIN, Inc. v. Verisign*, 545 F.3d 1359 (Fed. Cir. 2008) ..................... 28, 29

*Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307 (Fed. Cir. 2007)........................48

*Rolls-Royce, Plc. v. United Tech. Corp.*, 603 F.3d 1325 (Fed. Cir. 2010)............................................................44

*Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368 (Fed. Cir. 2006)................ 36, 42

*Schering Corp. v. Geneva Pharm, Inc.*, 339 F.3d 1373 (Fed. Cir. 2003)............................................................26

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325 (Fed. Cir. 2010)....................................................... 26, 30

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325 (Fed. Cir. 2010) ............................................................26

**Statutes**

28 U.S.C. § 1295(a)(4)(A) ...........................................................2

35 U.S.C. § 102 .................................................... 2, 4, 26, 29

35 U.S.C. § 103(a) ............................................................ passim

35 U.S.C. § 141 ...........................................................................2

37 C.F.R. § 41.77(b) ..................................................................21

5 U.S.C. § 706(2)(A)................................................................25

5 U.S.C. § 706(2)(E) ..............................................................25

**Rules**

Federal Circuit Rule 47.5(a) ....................................................1

Federal Circuit Rule 47.5(b) ....................................................1

**Other Authorities**

MPEP § 2143.01.III ...............................................................44

MPEP § 2143.01.IV ...............................................................43

MPEP § 2143.03 ....................................................................49

MPEP § 2143.E.......................................................................44

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), no other appeal in or from the same proceeding in the lower body was previously before this or any other appellate court.

Pursuant to Federal Circuit Rule 47.5(b), the following case may be affected by this appeal: *TDY Industries Inc. v. Ingersoll Cutting Tool Co.*, No. 2:10-cv-00790-CB (W.D. Pa., filed June 10, 2010). The United States District Court for the Western District of Pennsylvania court has stayed proceedings in the case pending the reexamination of United States Patent No. 7,244,519 ("the '519 patent"), which is the subject of this appeal.

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141, this Court has jurisdiction over this appeal from a final decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office (hereinafter "PTAB") in *Inter Partes* Reexamination No. 95/001,417 involving the '519 patent.  On January 10, 2014, Kennametal Inc. timely filed a Notice of Appeal (A2215-A2216) of the Decision on Appeal dated May 6, 2013 (A2051-A2070), and the Decision on Request for Rehearing, dated November 12, 2013 (A2172-A2180) by the PTAB.

## ISSUES PRESENTED ON APPEAL

1.    Whether the PTAB erred in entering the new ground of rejection under 35 U.S.C. § 102 by finding that U.S. Patent No. 6,554,548 to Grab disclosed the invention in "the same way" as recited in claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89.

2.    Whether the PTAB erred in entering the new ground of rejection under 35 U.S.C. § 102 by finding that U.S. Patent No. 6,554,548 to Grab disclosed a "definite and limited set" of choices that enable one of skill in the art to "at once envisage" the invention recited in claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89.

3.    Whether the PTAB erred in affirming the Examiner's rejection under 35

U.S.C. §103 of claims 5-8, 19-22, 25-26, 33-34, 37-44, 47-48, 51-52, 56-57, 59,

84, 86-88, 90, and 93.

4.    Whether the PTAB erred in failing to consider evidence of secondary

considerations when rejecting claims 2-14, 15-52, 56-59, 84-90, and 93 under 35

U.S.C. § 103 based on combinations of prior art, which did not include U.S. Patent

No. 6,554,548 to Grab.

## STATEMENT OF THE CASE

Appellant Kennametal Inc. ("Kennametal"),[1] which owns the '519 patent,

appeals the Decision on Appeal dated May 6, 2013 (A2051-A2070) and the

Decision on Request for Rehearing dated November 12, 2013 (A2172-A2180)

rendered by the PTAB in *Inter Partes* Reexamination No. 95/001,417.  The '519

patent relates to cutting tools and inserts used in metalworking and machining

operations, and particularly describes and claims cutting tools comprising: (1) a

cemented carbide substrate having a binder comprising ruthenium; and (2) a

physical vapor deposition ("PVD") coating applied to the substrate.

Before the '519 patent, those of ordinary skill in the art did not believe that

cutting tools having these characteristics could effectively machine or otherwise

---

[1] The term "Kennametal" is used herein to refer to Appellant Kennametal Inc. as well as the previous patent owner TDY Industries, Inc.  TDY Industries, Inc. transferred all rights, title, and interest in the '519 patent to Kennametal Inc. by way of assignment executed on November 4, 2013.  *See* A2191.

3

cut metal. This is so because ruthenium enhanced an effect known as "cobalt capping," which was known to cause adhesion problems with thin coatings, such as PVD coatings. However, the inventors of the '519 patent unexpectedly and surprisingly discovered how to make PVD-coated cutting tools with a ruthenium-featured binder that not only adhered well, but in fact performed better than the prior art during machining or other metalworking operations.

Following *inter partes* re-examination by the Examiner, the PTAB erroneously: (1) reversed the Examiner's determination not to reject certain claims under 35 U.S.C. § 102(b) based on U.S. Patent No. 6,554,548 to Grab ("Grab"), which was a new ground of rejection; (2) affirmed the Examiner's determination not to adopt certain rejections under § 102(b) based on U.S. Patent No. 6,214,247 to Leverenz ("Leverenz"); and (3) affirmed the rejections of certain dependent claims under 35 U.S.C. § 103(a) via different combinations of prior art.[2]  A2067-A2068. The PTAB did not make any determinations as to whether certain independent claims are unpatentable under § 103(a) because it entered the new § 102 rejection of these claims by Grab. A2067-A2068. The PTAB denied Kennametal's request for rehearing of the new ground of rejection based on Grab. A2179.

---

[2] A more detailed list of the rejection of the different groups of claims and different combinations of prior art is provided herein at Section III of the Statement of Facts section (pp. 21-22).

The prior art of record, however, does not disclose cutting tools having a ruthenium-featured binder and a PVD coating, much less does it teach making such tools that avoided the adhesion problems known in the prior art.  Thus, Kennametal appeals the rejection of claims 1-4, 9-18, 23-24, 27-31, 35-36, 45-46, 49-50, 58, 83, 85, and 89 under § 102(b) and the rejections of claims 2-14, 16-31, 33-52, 56-59, 84-88, 90, and 93 under § 103(a), and respectfully requests that this Court reverse these rejections by the PTAB.

## STATEMENT OF FACTS

### I.   The '519 Patent Describes a Novel and Non-Obvious PVD-Coated Cutting Tool That Includes A Ruthenium Binder.

#### A. Introduction to Technology

Cutting tools, also known as inserts, and including those described in the '519 patent, are designed primarily for use in metalworking and machining operations, such as, for example, cutting, drilling, milling, turning, and/or grooving metal for use in applications such as automobile or aircraft manufacture.  A9 (1:15-19).  Cutting tools or inserts generally have a substrate that either is uncoated or may have a coating.  A9 (1:19-24).  The substrate often comprises hard particles and a binder material and can be made from many materials.  A9 (1:27-36).  A common example of a substrate is a cemented carbide substrate.  A9 (1:27-29).  Substrates may additionally include a single or multiple layer coating to enhance cutting performance of the cutting tool.  A9 (2:22-24).  Different methods to apply

5

these coatings include chemical vapor deposition (CVD), moderate temperature chemical vapor deposition (MTCVD), physical vapor deposition (PVD), diamond coating, and diamond-like coating.  A9 (2:24-27).

The process for manufacturing cemented carbide cutting tools conventionally involves consolidating metallurgical powders to form a compact. A9 (1:19-21).  The compact includes a powder of hard particles (such as tungsten carbide) and a binder powder of a metal or metal alloy (such as cobalt, nickel, iron, or other alloys).  A9 (1:32-34).  When the compact is sintered (heated), the binder "cements" the hard particles with a continuous matrix interconnected in three dimensions.  A9 (1:34-36).

The compact of metallurgical powder, once sintered, often forms a tool blank that has a solid monolithic construction.  A9 (1:22-24).  The tool blank may be appropriately machined to form cutting edges, features, or particular geometries desired for the cutting tool and its intended application.  A9 (1:24-26).  A single or multiple layer coating may be applied to the machined tool blank by one or more of the methods described above depending on the tool blank.  A9 (2:22-24).

Cemented carbide-based cutting tools are industrially important because of the combination of tensile strength, wear resistance, and toughness that is characteristic of these materials.  A9 (1:27-29).  The tools can include different metallurgical powders that determine the physical and chemical properties of the

6

tool. A9 (1:37-39). By varying components of the metallurgical powders, cutting tools may be produced with unique properties matched for specific machining or metalworking applications. A9 (1:45-48).

### B. State of the Art at Time of Invention of the '519 Patent

As of at least 2004, the time of invention of the embodiments described in the '519 patent, there was only limited knowledge of cemented carbide cutting tools with ruthenium added to the binder. *See, e.g.*, A9 (1:54-56); A351-A354, ¶¶ 6-13; A363, ¶ 13. Specifically, prior art cutting tools having ruthenium-featured binders in the substrate typically either were uncoated or included coatings applied by CVD methods. A9 (2:58-61); A351-A354, ¶¶ 7-8, 11; A363, ¶ 13.

This was so because ruthenium-featured binders in substrates were known to give rise to enhanced "cobalt capping" effects. *See, e.g.*, A352, ¶¶ 9-10; A364-A365, ¶¶ 15-17. Cobalt capping refers to the fact that, during sintering of the cemented carbide compact, the cobalt binder often randomly distributes and forms surface layers on the surfaces of the cemented carbide substrate. A352, ¶¶ 9-10; A364, ¶ 16; A1118-A1119, ¶¶ 12-13. It was known in the art that including ruthenium in the binder enhanced cobalt capping effects, and thus caused irregularities that prevented certain coatings – particularly thinner coatings such as PVD coatings – from adhering well to the substrate. A352-A354, ¶¶9-13; A365, ¶ 18.

7

In contrast, however, cobalt capping effects enhanced by a ruthenium-featured binder were not as problematic in uncoated or CVD-coated cutting tools. A353 ¶ 11; A364-A365, ¶ 17.  For uncoated cutting tools, any capping layers randomly distributed on the surface quickly wear down during machining operations.  A365-A366, ¶ 17.  CVD processes operate at higher temperatures and deposit thicker coatings, which minimized problems associated with cobalt capping.  A353, ¶ 11; A364-A365, ¶ 17; A1103, ¶ 18.

But because PVD coatings are relatively thin, at the time of the invention of the '519 patent those of ordinary skill in the art believed that enhanced cobalt capping effects would prevent the manufacture of acceptable cemented carbide cutting tools comprising a ruthenium-featured binder and a wear-resistant PVD coating.  A363-364, ¶ 14; A1103, ¶ 18.  Put simply, the knowledge of those in the art at that time suggested that PVD coatings would not acceptably adhere to a substrate comprising a ruthenium-based binder due to the ruthenium-enhanced cobalt capping effects.  A351, ¶¶ 6-8; A365, ¶ 18.

## C. Overview of the '519 Patent Specification

For the first time, the '519 patent taught those of ordinary skill in the art that it was possible to make an effective PVD-coated cutting tool having a ruthenium-featured binder in the substrate.  Specifically, the '519 patent describes coated cutting tools comprising a substrate, where the substrate comprises hard particles

8

and a binder, and the binder comprises ruthenium.  A10 (3:48-50).  The cutting tools have at least one PVD coating on at least a portion of the substrate.  A13, 3:48-54.  In some embodiments, the ruthenium concentration in the binder may be from 3% to 30% by weight.  A13 (3:55-59).  Contrary to the expectations of those skilled in the art, the PVD-coated, ruthenium-featured cutting tools, as described in the '519 patent, were found to demonstrate superior machining performance relative to both CVD-coated ruthenium-featured cutting tools and PVD-coated cutting tools lacking ruthenium.  A365-A366, ¶¶ 19-20.  The inventors thus discovered how to successfully and reproducibly manufacture PVD-coated ruthenium-featured cutting tools.  A365-A366, ¶ 20.  These superior performance characteristics, described in specific examples in the specification of the '519 patent (A13 (9:40-10:43)) were surprising and unexpected.  A366, ¶ 20; A372-373, ¶¶ 12-14.

For example, the testing results described in the '519 patent show that embodiments of PVD-coated ruthenium-featured cutting tools exhibit 55% and 245% longer tool lifetimes than comparable PVD-coated cutting tools lacking ruthenium.  A13 (10:36-39).  As further described in the '519 patent, embodiments of PVD-coated ruthenium-featured cutting tools exhibited over 5 to 6 times longer tool lifetimes than a comparable CVD-coated ruthenium-featured cutting tool.  A8, Figure 2; A13 (10:36-39).

9

### D. Overview of Pending Claims

The '519 patent issued with 31 claims, with claims 1 and 15 being independent claims. A21-A22. During the *inter partes* reexamination, Kennametal filed responses to Office Actions that amended claims 1, 2, 16, 17, and 18 and added new claims 32-94, of which claims 32, 53-55, 60-82, 91, 92, and 94 were later canceled. A396-A409; A1428. Thus, claims 1-31, 33-52, 56-59, 83-90, and 93 are presently pending. Claims 1, 15, 83, 89, and 93 are independent claims. The claims relate generally to cutting tools having a PVD-coated substrate, where the substrate comprises hard particles and a binder, and the binder comprises ruthenium, and to methods of coating such substrates. A10 (3:48-50).

Independent claim 1 recites:

> 1. A cutting tool, comprising:
>
> a cemented carbide substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium; and
>
> at least one physical vapor deposition coating on at least a portion of the substrate.

Independent claim 15 recites:

> 15. A method of coating a substrate, comprising:
>
> applying a coating on a cemented carbide substrate by physical vapor deposition, wherein the substrate comprises hard particles and a binder and the binder comprises ruthenium.

10

Independent claim 83 recites:

> 83.  A method of coating a substrate, comprising:
>
> treating a cemented carbide substrate, wherein the cemented carbide substrate comprises tungsten particles and a binder, and the binder comprises ruthenium and cobalt;
>
> applying a physical vapor deposition coating directly on the cemented carbide substrate;
>
> wherein the treating reduces cobalt capping on the cemented carbide substrate.

Independent claim 89 recites:

> 89.  A cutting tool, comprising:
>
> a mechanically-ablated, cemented carbide substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium; and
>
> at least one PVD coating on at least a portion of the mechanically-ablated, cemented carbide substrate.

Independent claim 93 recites:

> 93.  A cutting tool, comprising:
>
> a wet-blasted cemented carbide substrate, wherein the cemented carbide substrate consists of
>
> > tungsten carbide particles,
> >
> > at least one titanium carbide particles, tantalum carbide particles, and niobium carbide particles, and

11

> a binder, wherein the binder consists of ruthenium, cobalt, iron, and nickel, and wherein the concentration of ruthenium in the binder is from 8% to 20% by weight; and
>
> a titanium aluminum nitride coating on at least a portion of the cemented carbide substrate, wherein the titanium aluminum nitride coating is applied directly to the cemented carbide substrate by physical vapor deposition, and wherein the titanium aluminum nitride coating has a thickness of 2 to 6 micrometers.

The pending dependent claims further define and limit the respective independent claims, for example, by specifying characteristics of the coating (*see, e.g.*, A1664-A1666, claims 2 and 9-12), characteristics of the binder (*see, e.g.*, A1664-1665, claims 3-8), additional steps for treatment of the substrate (*see, e.g.*, A1667-1668, claims 23-26), and combinations of these features.

## II. Summary of Proceedings Involving the '519 Patent

### A. Federal District Court Litigation

The '519 patent is presently asserted by Kennametal (through its predecessor) against Ingersoll Cutting Tool Company ("Ingersoll") in the United States District Court for the Western District of Pennsylvania. *See TDY Industries Inc. v. Ingersoll Cutting Tool Co.*, No. 2:10-cv-00790-CB (W.D. Pa., filed June 10, 2010). This infringement action was filed on June 10, 2010. Ingersoll filed a request for *inter partes* reexamination on August 6, 2010, which led to the decisions at issue in the present appeal. A140-A141. The infringement lawsuit

12

remains stayed pending resolution of the *inter partes* reexamination and this appeal. A1634.

## B. *Inter Partes* Reexamination

The request for *inter partes* reexamination was granted on October 22, 2010, and a non-final Office Action issued on October 22, 2010. A280-A296. Kennametal provides a summary of the prior art at issue on appeal in Section II.B.1. (pp. 13-16) and a summary of different actions during the reexamination relevant to the present issues on appeal in Section II.B.2. (pp. 16-21).

### 1. Prior Art at Issue in Reexamination Proceeding

#### a. Grab – U.S. Patent No. 7,244,519 (A58-A67)

Grab describes a coated cutting insert having a surface zone in which the binder content is enriched relative to the binder content in the bulk of the insert body. A62 (1:13-40); A355, ¶ 15. Grab describes the application of a coating scheme having one or more coating layers preferably applied by CVD and MTCVD, and only briefly mentions in one place that a coating layer also is "contemplate[d]" to be applied by PVD. A63 (4:59-61); *see also* A355 at ¶ 15. Specifically, Grab discloses the following:

> Generally speaking, one or more of the coating layers of the coating schemes are applied by chemical vapor deposition (CVD) and moderate temperature chemical vapor deposition (MTCVD). However, applicants also contemplate that one or more layers of a coating scheme may be applied by physical vapor deposition (PVD).

A63 (4:56-61). Grab does not mention applying a PVD coating directly on the substrate, nor does it mention PVD coating at all elsewhere in the specification, including in any of its multiple examples. A64-66 (6:45-10:6).

In a different section of the specification from that describing the coating scheme, Grab states that the binder used to form the substrate may optionally use certain elements, one of which is ruthenium. A62 (2:55-57). However, Grab never describes or suggests application of a PVD coating to a substrate comprising ruthenium in the binder, nor does Grab in any way address the problem known in the art of cobalt capping that prevented ruthenium-featured substrates from being used with thinner coatings, such as PVD coatings. A355, ¶ 15.

b. <u>Leverenz – U.S. Patent No. 6,214,247 (A88-A119)</u>

Leverenz describes a gas etching process used on cemented carbide substrates including hard particles joined together by a continuous binder phase. A88 (Abstract); *see also* A355, ¶ 16. The methods described in Leverenz address removing binder at the surface of the cemented carbide to improve adhesion of the applied coating. A112 (1:14-30). Leverenz describes cemented carbide materials that include metal carbide particles joined together with a continuous binder phase including cobalt, nickel, copper, and/or iron. A114 (5:39-43). Leverenz further discloses that in addition to cobalt, nickel, copper, and/or iron, the binder may optionally use certain other elements, one of which is ruthenium. A114 (5:43-47).

14

Similar to Grab, Leverenz only generally mentions applying a PVD coating in two locations, and none of its many examples includes a PVD coating.  A115, 7:5-9 & 8:49-51; A116-A118 (9:18-13:11).  Leverenz further does not disclose or suggest combining a ruthenium-featured cemented carbide substrate and a PVD coating. A355-A356, ¶¶ 17-18.

### c.  Additional Prior Art Used in Obviousness Rejections

The PTAB relied on additional prior art as a basis for rejections of the dependent claims.  Certain references are used in combination with Grab or Leverenz as a basis to reject certain dependent claims while other references are used in combination with one another to reject certain dependent claims.  The PTAB did not use any combinations of the additional prior art alone to reject claims 1, 15, 83, or 89.  The PTAB relied on the following references as primary references for rejecting independent claim 93 and certain dependent claims in the '519 patent: alleged Admitted Applicant Prior Art ("AAPA"), which is based on the background section of the '519 patent; an article from the *Modern Development in Powder Metallurgy* by Tracy et al. ("Tracy") (A683-A696)[3]; U.S. Patent No. 4,734,339 to Schachner et al. ("Schachner") (A120-A123); and U.S. Patent No. 5,603,075 to Stoll et al. ("Stoll") (A124-A134).  While these references

---

[3] Tracy et al., "Development of tungsten carbide-cobalt-ruthenium cutting tools for machining steels," *Modern Development in Powder Metallurgy*, 14, 281-292 (1980).

generally mention or describe ruthenium-featured tools, none of the references describe or suggest a ruthenium-featured tool with a PVD coating, nor do they address overcoming any issues related to cobalt capping effects.  A357-358, ¶¶ 20-21.

### 2.  Prosecution History of *Inter Partes* Reexamination

#### a.  October 22, 2010 Office Action

In the first Office Action dated October 22, 2010, the Examiner did not adopt Ingersoll's proposed rejection of claims 1-4, 9-18, 23, 24, and 27-31 under § 102 based on Grab.  A287.  The Examiner stated, *inter alia*, that "[n]one of Grab's examples prepared at cols. 6-9 contains ruthenium, and each of the examples uses CVD rather than PVD for forming the coatings."  A287.  The Examiner found that ruthenium (Ru) was an optional component of the binder in Grab.  A287.  Ultimately, the Examiner found that "[i]n view of the selections of Ru and PVD that need to be made and in view of said examples, Grab does not anticipate the claims."  A287.  The Examiner did, however, enter a rejection of claims 1-4, 9-18, 23, 24, and 27-31 under § 103 based on Grab.  A287-A288.

The Examiner additionally did not adopt Ingersoll's proposed rejections of claims 1-4, 9-18, 23, and 27-31 as anticipated by Leverenz.  A289.  The Examiner stated, *inter alia*, that "[n]one of Leverenz's examples prepared at cols. 9-13 contains ruthenium or uses PVD."  A290.  Ultimately, the Examiner found that

"Leverenz does not anticipate the claims."  A290.  The Examiner did again, however, enter a rejection of claims 1-4, 9-18, 23, and 27-31 under § 103 based on Leverenz.  A290.

The Examiner proceeded to adopt the various grounds of rejection of the claims based on combinations of prior art including the following references: Grab, Leverenz, Schachner, Stoll, Tracy, alleged AAPA, Shing,[4] Kobayashi,[5] Westphal,[6] Tonshoff,[7] and Destefani.[8]  A287-A295.

b.  Response to October 22, 2010 Office Action

Kennametal filed responses to the Office Action on February 22, 2011 (A395-A436, A349-A384) and April 18, 2011 (A833-A848), and Ingersoll filed comments on July 12, 2011 (A1066-A1097).  In Kennametal's February 22, 2011 and April 18, 2011 responses, claims 2, 16, 17, and 18 were amended and new claims 32-94 were added.  A396-A411; A834-A848.  Kennametal refuted the rejections of the Examiner by providing clear reasons why the claims were

[4] "Shing" refers herein to "The effect of ruthenium additions on hardness, toughness, and grain size of WC-Co," *Int. J. of Refractory Metals & Hard Materials*, vol. 19, pp. 41-44, 2001 by Shing et al.  (A68-A71).

[5] "Kobayashi" refers herein to U.S. Patent Application Publication No. 2002/0081464 by Kobayashi et al.  (A72-A82).

[6] "Westphal" refers herein to U.S. Patent Application Publication No. 2003/0104254 by Westphal et al.  (A83-A87).

[7] "Tonshoff" refers herein to "Surface treatment of cutting tool substrates," *Int. J. Tools Manufacturing*, 38(5-6), 469-76 (1998) by Tonshoff et al.  (A630-A637).

[8] "Destefani" refers herein to "Cutting tools 101: Coatings," *Manufacturing Engineering*, 129(4), 2002 ("Destefani").  (A647-A651).

patentable over the prior art identified by the Examiner, including through the

submission of declarations from the inventors and experts.  A349-A384; A395-

A436.

For example, Kennametal refuted that the Office Action established a *prima*

*facie* case of obviousness, principally as none of the then-cited prior art teaches to

combine a cutting tool both with a substrate having a ruthenium-featured binder

and a PVD coating.  A424-A429.  Additionally, Kennametal set forth evidence of

secondary considerations of non-obviousness, including unexpected results and

copying.  A429-A436.

### c.  Action Closing Prosecution and Responses

An Action Closing Prosecution ("ACP") was issued on September 23, 2011.

A1301-A1393.  Kennametal filed a response to the ACP on November 23, 2011

(A1427-A1446), and Ingersoll filed comments on December 23, 2011 (A1449-

A1472).  In the ACP, the Examiner entered new grounds of rejection for the newly

added claims based on different combinations of references.  A1357-A1393.  All

the rejections in the ACP were obviousness-type rejections.  A1301-1393.

In Kennametal's response to the ACP, claim 1 was amended and claims 32,

53-55, 60-82, 91, 92, and 94 were cancelled.  A1429-A1429.  Kennametal refuted

the rejections of the Examiner by providing clear reasons why the claims were

patentable over the prior art identified by the Examiner, including that the

18

Examiner had not provided any objective or apparent reason to combine the cited art's separate teachings of ruthenium-containing binders and PVD coatings, nor had the Examiner demonstrated that it would have been obvious to try to combine the separate teachings of the references. A1434-A1444. Kennametal additionally directed the Office to Ingersoll's own expert declarations, including concessions that an infinite number of possible cutting tool materials, coatings, and manufacturing methods further support the fact that a *prima facie* case of obviousness had not been made. A1437.

### d. Right of Appeal Notice ("RAN")

The Examiner issued a RAN on March 30, 2012 in which pending claims 1-31, 33-52, 56-59, 83-90, and 93 were rejected as allegedly being unpatentable under 35 U.S.C. § 103(a). A1491-A1591. The RAN maintained its rejections of the claims as set forth in the ACP. A1491-A1591. With respect to the § 103 rejection based on Grab, the Examiner stated that Grab taught that "only three coating methods" and that selecting ruthenium "out of a short list" of materials were both within the four corners of the reference. A1552.

Kennametal filed a notice of appeal to the PTAB on April 20, 2012 (A1595-A1599), and Ingersoll filed a notice of appeal to the PTAB on April 26, 2012 (A1605-A1606). Kennametal appealed all rejections of all pending claims as set forth in the RAN. A1595. Ingersoll cross-appealed the Examiner's decision (1)

19

not to adopt Ingersoll's proposed rejections of claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89 as anticipated by Grab; and (2) not to adopt Ingersoll's proposed rejections of claims 1-4, 9-18, 23, 27-31, 33-38, 45, 46, 58, and 83-85 as anticipated by Leverenz.  A1605-A1606.

### C. PTAB Decision on Appeal and Request for Rehearing

The PTAB issued a Decision on Appeal on May 6, 2013.  A2051-A2070.  In the Decision on Appeal, the PTAB did the following:

- Reversed the Examiner's determination not to adopt the rejections of claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89 as anticipated by Grab (A2059);

- Affirmed the Examiner's determination not to adopt the rejection of claims 1-4, 9-18, 23, 27-31, 33-38, 45, 46, 58, and 83-85 as anticipated by Leverenz (A2061);

- Did not reach the rejection of any of independent claims 1, 15, or 83 under 35 U.S.C. § 103(a) as being unpatentable for obviousness[9] (A2063-67); and

- Affirmed all of the rejections of dependent claims 2-14, 16-31, 33-52, 56-59, 84-88, and 90 under 35 U.S.C. § 103(a) as being unpatentable for obviousness  (A2067).

---

[9] Kennametal notes that the Decision on Appeal expressly states: "Obviousness rejections of claims 1, 15, 83, 89, and 93 were not reached because these claims were found to be anticipated by Grab."  A2067-68.  This statement is unclear in view of the Decision on Appeal as a whole.  First, claim 93 was not indicated as anticipated by Grab.  *See* A2057-69; A2067.  While the Decision on Appeal expressly states that the obviousness rejection of claim 89 was not reached, the Decision arguably affirms that claim 89 is rejected as obvious in view of Leverenz in view of Kobayashi; Leverenz in view of Tonshoff; Leverenz in view of Shing and Kobayashi; and Leverenz in view of Shing and Tonshoff.  *See* A2065-66.  At the least, the Decision on Appeal is unclear.

The PTAB's reversal of the Examiner's determination not to adopt the rejection of claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89 as anticipated by Grab was a new ground of rejection under 37 C.F.R. § 41.77(b).  A2067.  In doing so, the PTAB concluded that Grab disclosed "about 15 different embodiments – a 'definite and limited' class, each of which would be immediately 'envisage[d]' by one of ordinary skill in the art reading claim 5 of Grab" citing *In re Petering*, 301 F.2d 676, 681 (CCPA 1962).  A2058.  When affirming the rejections of the dependent claims under 35 U.S.C. § 103(a), the Examiner did not consider the evidence of secondary considerations in each of the obviousness determinations as related to each respective independent claim.

Kennametal requested a rehearing by the PTAB.  A2091-A2103.  The PTAB denied the request for rehearing.  A2172-A2180.

## III.  Summary of Pending Claim Rejections

Claims 1-31, 33-52, 56-59, 83-90, and 93 are rejected.

The following chart summarizes and groups the rejections set forth in the PTAB's Decision on Appeal and Decision on Request for Rehearing:

| Rejected Claims | Basis for Rejection |
|---|---|
| Independent claims 1, 15, 83, and 89<br><br>Dependent claims 2-4, 9-14, 16-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, and 85 | Anticipated under § 102(b) by Grab |

| Dependent claims 5-8, 19-22, 23, 24, 56, 59, 86, and 90 | Unpatentable under § 103(a) over Grab in combination with one or more of Shing, Kobayashi, Westphal, and Tonshoff |
|---|---|
| Dependent claims 33, 34, 37-44, 47, 48, and 84 | Unpatentable under § 103(a) over Leverenz alone |
| Independent claims 89 and 93<br><br>Dependent claims 2-14, 16-27, 31, 35, 36, 45, 46, 49-52, 56-59, 85-88, and 90 | Unpatentable under § 103(a) over Leverenz in combination with one or more of Kobayashi, Westphal, Tonshoff, Shing, and Destefani |
| Independent claim 93<br><br>Dependent claims 2-14, 16-31, 33-52, 56-59, 84-88, and 90 | Unpatentable under § 103(a) over AAPA in combination with one or more of Grab, Kobayashi, Westphal, Tonshoff, Shing, and Destefani |
| Independent claim 93<br><br>Dependent claims 32-52, 56-59, 84-88, and 90 | Unpatentable under § 103(a) over Tracy in combination with one or more of Tonshoff and Stoll |
| Dependent claims 2-14, 16-31, 33, 34, 39-50, 56-58, 86-88, and 90 | Unpatentable under § 103(a) over Schachner in combination with one or more of Shing, Kobayashi, and Westphal |
| Independent claim 93<br><br>Dependent claim 2-14, 16-31, 33-52, and 56-59, 84-88, and 90 | Unpatentable under § 103(a) over Stoll in combination with one or more of Schachner, Kobayashi, Westphal, and Tonshoff |

In the Decision on Appeal, independent claims 1, 15, and 83 are only rejected under § 102(b) based on Grab. A2059. Further, the PTAB specifically stated that it was "unnecessary" for it to consider and reach the following rejections under 35 U.S.C. § 103(a):

22

- Claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89 as unpatentable over Grab (A2063);

- Claims 1-4, 9-18, 23, 27-31, 58, 83, and 85 as unpatentable over Leverenz (A2064);

- Claims 1, 15, and 83 as unpatentable over Leverenz in view of Shing (A2066);

- Claims 1, 15, 83, and 89 as unpatentable over AAPA in view of Grab (A2063);

- Claims 1, 15, 83, and 89 as unpatentable over Schachner in view of Shing and Schachner in view of Shing and Kobayashi (A2066-A2067); and

- Claims 1, 15, 83, 89 as unpatentable over Stoll in view of Schachner, Stoll in view of Schachner and Kobayashi, and Stoll in view of Tonshoff (A2066-A2067).

## SUMMARY OF ARGUMENT

The PTAB erred in (1) entering a new ground of rejection that Grab anticipated claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89; and (2) affirming the rejections of claims 2-14, 16-52, 56-59, 84-90, and 93 under 35 U.S.C. § 103(a).

With respect to the anticipation rejection, first, Grab does not describe all elements of the claims arranged as in the claim. Grab fails to disclose a cutting tool comprising a ruthenium-containing substrate and a PVD coating. This deficiency of Grab prevents a conclusion of anticipation. Second, the PTAB erred by relying on *In re Petering* because Grab does not disclose a defined and limited

23

class of embodiments such that one of skill in the art would "at once envisage" the claimed tools and methods from Grab's disclosure. Instead of the "about 15 different embodiments" that the PTAB incorrectly found, Grab discloses at a minimum 93, and as many as over 10,000 embodiments, when considering only the two variables of binder composition and coating scheme. Such disclosure is insufficient to anticipate the claims.

Regarding the § 103 rejections, the PTAB erred in rejecting claims 2-14, 16-52, 56-59, 84-90, and 93 as obvious by failing to articulate reasoning with some rational underpinning to support the legal conclusion of obviousness. While ruthenium-containing binders and PVD coatings were each *separately* known at the time of the invention, the '519 patent was first to teach those of ordinary skill in the art that it was possible to make an effective PVD-coated cutting tool having a ruthenium-featured binder in the substrate. The knowledge of those in the art at the time of invention described in the '519 patent suggested that PVD coatings would not acceptably adhere to a substrate comprising a ruthenium-based binder due to the ruthenium-enhanced cobalt capping effects. As such, the PTAB failed to establish a *prima facie* case of obviousness and failed to provide a basis for the piecing together of the distinct and separate teachings of the prior art without the impermissible use of hindsight of the '519 patent.

Further, the PTAB erred by affirming the rejections of dependent claims without considering or setting forth any obviousness analysis, including any consideration of the evidence of secondary considerations, of the corresponding independent claim for the particular combination of references. The PTAB expressly stated it was "unnecessary" for it to consider and reach any obviousness determinations of claims 1, 15, and 83. In doing so, the PTAB erred in failing to consider any secondary considerations in making its obviousness rejections of dependent claims further limiting claims 1, 15, and 83, particularly those *not* based on Grab as a primary reference.

Accordingly, this Court should reverse the PTAB's decision with regard to the claims on appeal.

## ARGUMENT

### I.  Standard of Review

This Court reviews the PTAB's factual findings for substantial evidence and its legal conclusions *de novo*. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). This Court reverses legal conclusions that are "not in accordance with law" while findings of fact are reviewed and set aside when they are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (2)(E); *see Dickinson v. Zurko*, 527 U.S. 150, 162-65 (1999).

25

A prior art reference anticipates a patent claim under 35 U.S.C. § 102(b) if it discloses every claim limitation. *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1336-47 (Fed. Cir. 2010). "Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (quoting *Connell v Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983).

Where a reference fails to expressly disclose a limitation, said limitation may be inherently anticipated if that limitation "is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharm, Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). However, the inherent result must inevitably result from, or be immediately envisaged by, the disclosed steps; "[i]nherency . . . may not be established by probabilities or possibilities." *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011) (quoting *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981)).

A determination of invalidity for reasons of obviousness under 35 U.S.C. § 103 is a legal conclusion based on underlying facts. *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 736 (Fed. Cir. 2013) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)). The ultimate finding of obviousness is reviewed *de novo*, while the underlying factual findings are reviewed for substantial evidence.

26

*Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334 (Fed. Cir. 2013). Whether reasons show a person of ordinary skill would have combined references is a question of fact that this Court reviews for substantial evidence. *In re Hyon*, 679 F.3d 1363, 1365-66 (Fed. Cir. 2012). In reviewing the record for substantial evidence, the Court takes into account evidence that both justifies and detracts from the factual determinations. *Kotzab*, 217 F.3d at 1369.

An analysis of obviousness must be based on several factual inquiries: the scope and content of the prior art; the differences between the prior art and the claims at issue; the level of ordinary skill in the art at the time the invention was made; and secondary considerations of nonobviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). Relevant secondary considerations may include copying, commercial success, long-felt but unresolved needs, failure of others, and unexpected results. *Galderma*, 737 F.3d at 736 (citing *KSR*, 550 U.S. at 406). All evidence – especially including evidence of secondary considerations – must be considered prior to making any determination of obviousness. *Eurand, Inc. v. Mylan Pharm. Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.)*, 676 F.3d 1063, 1075 (Fed. Cir. 2012).

## II. The PTAB Erred When It Reversed the Examiner and Rejected the Claims as Anticipated by Grab.

The PTAB erred when it reversed the Examiner's determination and found that Grab anticipated claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83,

85, and 89. Grab does not describe all elements of these claims "arranged as in the claim." *Net MoneyIN, Inc. v. Verisign*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). Nor, as described below, does Grab disclose a defined and limited class of embodiments such that one of skill in the art would "at once envisage" the claimed tools and methods from its disclosure, as the PTAB incorrectly held, relying on the 1962 *In re Petering* decision. Rather, Grab cursorily refers without elaboration to hundreds of different potential characteristics, but contains no examples, discussion, or other disclosure of a PVD-coated cutting tool having a ruthenium-featured binder. Grab furthermore fails to even acknowledge, much less purport to solve, the problem of enhanced cobalt capping caused by ruthenium-featured binders that led people of ordinary skill in the art away from endeavoring to make the claimed invention.

### A. Grab Fails to Disclose the Claimed Invention in the Same Way as Claimed in the '519 Patent

In order to anticipate a claim under § 102, a single prior art reference "must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *Net MoneyIN*, 545 F.3d at 1369 (*citing Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)). The "arranged as in the claim" requirement for an anticipatory reference refers to the need for the reference to show all of the limitations of the claim arranged or combined in the exact same way as recited in the claims, not

merely in a particular order. *NetMoneyIN*, 545 F.3d at 1369-1370. "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed, and thus, cannot anticipate under 35 U.S.C. § 102." *Id.* at 1371; *see also In re Arkley*, 455 F.2d 586, 587 (CCPA 1972) ("[R]ejections under 35 U.S.C. § 102 are proper only when the claimed subject matter is identically disclosed or described in the prior art.").

Simply put, Grab fails to disclose a cutting tool comprising a ruthenium-containing substrate and a PVD coating that is applied directly to the substrate, as recited in claims 1, 89, and 93. Likewise, Grab fails to describe methods of coating a substrate comprising applying a PVD coating to a ruthenium-containing substrate, as recited in claims 15 and 83. First, Grab discloses ruthenium as an optional component of the binder phase – one of as many as five materials that could be used in 31 different combinations as described further below. Grab then only mentions PVD coatings as a potential alternative to CVD and MTCVD coatings – a potential alternative for one of the coating layers in the multi-layer "coating scheme" of Grab. A63 (4:56-61). Every example in Grab uses CVD and/or MTCVD coating techniques. A64-A66 (6:12-9:65). Further, the lists of components and techniques within Grab are simply lists of options. When a prior

29

art listing of optional components does not produce immediate recognition of the specifically claimed combination, the lists do not anticipate that combination. *Impax Labs., Inc. v. Aventis Pharm.*, 468 F.3d 1366, 1383 (Fed. Cir. 2006).

The Decision on Appeal itself directly quotes *Therasense* and recognizes the requirement that the prior art elements must be "arranged as in the claim" and cannot be "treated … as mere catalogs of separate parts." *Therasense*, 593 F.3d at 1332. However, the PTAB overlooked that Grab fails to describe any relationship or link between two of the many options (use of ruthenium in the binder and use of a PVD coating directly on the substrate), nor does it describe its cutting tool arranged in the same manner as the claimed cutting tool. Grab thus does not anticipate the claims at issue.

## B. The PTAB's Reliance on *In re Petering* is Erroneous

The PTAB's reliance on *In re Petering* to support an anticipation rejection of claims 1, 15, 83, or 89 and their respective dependent claims based on Grab is misplaced. Unlike the situation in *Petering*, Grab discloses a significant number of possible permutations of cutting tool materials, coatings, and manufacturing choices. *See also* A1111, ¶ 47 (Ingersoll declaration stating "[t]here are an infinite number of possible hardmetals, in terms of composition, microstructure, coatings, manufacturing methods and so on" when developing a hardmetal product). Grab thus does not describe a "definite and limited" class so as to trigger the *Petering*

30

analysis, much less only "about 15 different embodiments" so as to suggest to one of ordinary skill in the art to immediately "envisage" each of the species within that class, including the claimed cutting tools at issue.

1.  Summary of *In re Petering*

In *Petering,* the Court of Customs and Patent Appeals ("CCPA") determined that a broad generic disclosure in the prior art could anticipate a later specific disclosure where the earlier reference's "pattern of . . . specific preferences in connection with [the] generic formula constitutes a description of a definite and limited class of compounds…." *In re Petering*, 301 F.2d at 681. Specifically, the proposed claims at issue in *Petering* concerned a specific group of organic compounds referred to as isoalloxazines and methods of preparing such compounds. *Id.* at 677-678. The patent examiner had rejected certain claims based on a prior art patent to Karrer (U.S. Patent No. 2,155,555) that disclosed issoalloxazines and processes for manufacturing such compounds. *Id.* at 679. The disclosed compounds of Karrer were described by a generic formula and generic chemical structure. *Id.* at 681. As is often done in the chemical arts, the prior art disclosure at issue in *Petering* included a chemical structure and generic definitions of different functional groups in the disclosure, reproduced here:

31

wherein X, Y, Z, P, and R' represent either hydrogen or alkyl radicals, and R

represents a side chain containing an OH group.  *Id.* at 678, 681.  The *Petering*

court expressly found that this generic disclosure "encompasses a vast number and

perhaps even an infinite number of compounds since there is no express limit on

the size of the alkyl group or the structure and size of R."  *Id.* at 681.

But the *Petering* court's analysis did not stop there, nor did Karrer's

disclosure.  *Petering* found that the Karrer reference further disclosed "specific

preferences for X, Y, Z, P, R, and R' through [a] series of preferred R groups and

… eight specific isoalloxazines."  *Id*. at 681.  The *Petering* court found that a

simple calculation of options shows that the Karrer reference contains only 20

compounds, and thus a small enough number for the disclosure in the prior art

reference to anticipate the later pending claims.  *Id*.

Moreover, the *Petering* court emphasized that it is "not the mere number of

compounds in this limited class" that alone led to its decision, but rather it was also

"the total circumstances involved, including such factors as the limited number of

variations for R, only two alternatives for Y and Z, no alternatives for the other ring positions, and a large unchanging parent structural nucleus." *Id.* at 681-682. In other words, there were simply not many options for a person of ordinary skill in the art to select from in constructing compounds using the disclosure of the Karrer reference. It was "with these circumstances in mind" that the *Petering* court found that one of ordinary skill in the art reading the Karrer reference would "at once envisage each member" of the limited class of the various 20 compounds later claimed by Petering "as fully as if he had drawn each structural formula or had written each name." *Id.* at 681. Thus, the court held that the pending claims were properly rejected as anticipated.

### 2. The Broad List of Options in Grab Does Not Disclose Particular Limited Circumstances Characteristic of *Petering*

In contrast to the facts of *Petering*, the disclosure of Grab fails to indicate any preference for either a ruthenium-featured binder or a PVD coating, much less for the use of the two together in view of the known problems caused by enhanced cobalt capping. In fact, the underlying technology and the disclosure of Grab do not limit the choices such that, "with the circumstances [of Grab] in mind," one of ordinary skill in the art would calculate a limited set of particularized options – and especially options that include a ruthenium-featured substrate with a PVD coating notwithstanding the bias of those in the art against this combination.

33

First, Grab fails to indicate any preference at all for PVD over the two remaining disclosed coating methods of CVD and MTCVD. To the contrary, every coating scheme specifically described in Grab prefers the use of CVD and MTCVD, *rather than* PVD. A64-A65 (5:42-53, 7:31-44, 8:9-28, & 8:54-61). The PTAB itself noted that Grab "does not specifically recite that the coating is 'physical vapor deposition (PVD).'" A2175. The PTAB recognized that Grab characterized CVD and MTCVD as the preferred ways of applying the coating. A2058.

Further, nowhere in the specification or claims of Grab does Grab mention a preference toward application of a PVD coating directly to a substrate comprising ruthenium in its binder. Grab introduces ruthenium first as one of five "optional[]" components to be used in a substrate and its binder. A62 (2:55-57). In fact, based on the knowledge of the art, one of ordinary skill in the art would not "immediately envisage" the use of a ruthenium-featured binder with a PVD coating. As the declarations submitted by Kennametal make clear, one of skill in the art did not view a PVD-coated substrate with a ruthenium-featured binder as a viable option due to the known problems, such as enhanced cobalt capping, with doing so. A349-A358; A359-A367; A368-A373; A374-A384.

Moreover, unlike in the Karrer reference at issue in *Petering*, which disclosed only a few variations for the position of the various radicals and

34

functional groups, Grab offers a multitude of options for the ingredients and layers

in a cutting tool.  Thus, unlike in *Petering*, "the total circumstances involved" in

the disclosure of Grab includes (as described further below) many different

variations for the components in the cemented carbide substrate, the components in

the binder, the different layers and types of coatings, and endless other alternatives

that one of ordinary skill in the art would face when reviewing Grab.

In fact, the present situation is much more similar to the facts considered by

the CCPA in analyzing the potential application of *Petering* in a subsequent case.

*See In re Ruschig,* 343 F.2d 965 (C.C.P.A. 1965).  First, the *Ruschig* court warned

against a hindsight reconstruction of an applicant's invention in view of a

disclosure in the prior art merely of a broad, undefined class of options:

> We did not intend our *Petering* opinion or decision to
> become a precedent for the mechanistic dissection and
> recombination of the components of the specific
> illustrative compounds in every chemical reference
> containing them, to create hindsight anticipations with
> the guidance of an applicant's disclosures, on the theory
> that such reconstructed disclosures describe specific
> compounds….

*Ruschig*, 343 F.2d at 974.  Analyzing the prior art references in *Ruschig*, the court

determined that "[w]e would apparently get from the French patent some 130 and

from the Swedish patent some 156 compounds," which did not yield a "small

recognizable class with common properties[.]"  *Id.*  Under those facts, just as this

Court should hold under these, the *Petering* analysis did not apply.  *Id.*  This Court

has rejected similar attempts to extend *Petering* to circumstances analogous to those here. *See, e.g., ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1323 (Fed. Cir. 2012) (finding no anticipation under *Petering* without an explicit disclosure or substantial evidence that a sufficiently definite and limited class was present); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1377-78 (Fed. Cir. 2006) (rejecting application of *Petering* after finding prior art did not spell out a definite and limited class); *Eli Lilly & Co. v. Zenith Goldine Pharms., Inc.*, 471 F.3d 1369, 1376 (Fed. Cir. 2006) (affirming finding of no anticipation under *Petering* as reference did not disclose specific preferences within generic disclosure); *In re Deuel*, 51 F.3d 1552, 1559 (Fed. Cir. 1995) (reversing rejection of claims due to prior art failing to disclose or suggest genus of small size and simplicity as required by *Petering*). As described below, the same result should obtain here.

3. <u>Grab Discloses Many Different Embodiments – Not a "Definite and Limited Set" of 15 Choices.</u>

Grab discloses a genus of hundreds and potentially thousands of embodiments. Far from the limited class of 20 embodiments of *Petering*, this broad class of potential cutting tools in Grab simply does not provide any meaningful way for one of ordinary skill in the art to "at once envisage" a cemented carbide substrate comprising a ruthenium binder having a PVD coating on at least a portion of the cemented carbide substrate. Unlike the more limited

36

choices generally facing those in the field of organic chemistry at issue in the *Petering* case, those in the art of cutting tools and metallurgy face a tremendous number of variables and choices when developing products that result in an almost infinite number of alloys.

The PTAB improperly concluded that Grab disclosed "about 15 different embodiments – a 'definite and limited' class, each of which would be immediately 'envisage[d]' by one of ordinary skill in the art." A2058. The PTAB so concluded by stating that Grab disclosed only 5 possible components for the binder and only 3 possible coating schemes. A2058. This conclusion is not supported by substantial evidence and is in clear error as the PTAB ignored the specific language in Grab stating that each binder component and each coating variation could be combined together in many different ways. In doing so, the PTAB woefully underestimated the number of disclosed embodiments in Grab. The PTAB thus appears to have relied on hindsight anticipation that was cautioned against by *In re Ruschig*. When considering the plain language of claim 5 of Grab and the specification, Grab discloses at a minimum 93 and as many as over 10,000 embodiments even when considering only the two variables of binder composition and coating scheme. Only a "mechanistic dissection and reconstruction" permitted the PTAB to improperly create this hindsight anticipation.

Specifically, claim 5 of Grab discloses that the binder alloy "further includes *one or more of* tungsten, iron, nickel, ruthenium, and rhenium." A66 (10:46-48) (emphasis added). The PTAB ignored the phrase "one or more of" when it determined that claim 5 of Grab merely disclosed "15 different embodiments" (5 binder composition elements and 3 coating schemes), and thus, it only considered the five elements disclosed in claim 5 *independently*. Under the plain language of claim 5 of Grab, the PTAB should have considered those five elements *as well as various combinations of those elements*.

Claim 5 thus discloses a combination of one or more of five elements which results in thirty-one (31) distinct combinations. The following is a list of the 31 different combinations (W = tungsten, Fe = iron, Ni = nickel, Ru = ruthenium, Re = rhenium):

| W | W, Ru | W, Ru, Re | Fe, Ru | Ni, Re |
|---|---|---|---|---|
| Fe | W, Re | W, Fe, Ni, Ru | Fe, Re | Ni, Ru, Re |
| Ni | W, Fe, Ni | W, Fe, Ni, Re | Fe, Ni, Ru | Ru, Re |
| Ru | W, Fe, Ru | W, Fe, Ru, Re | Fe, Ni, Re | |
| Re | W, Fe, Re | W, Ni, Ru, Re | Fe, Ru, Re | |
| W, Fe | W, Ni, Ru | W, Fe, Ni, Ru, Re | Fe, Ni, Ru, Re | |
| W, Ni | W, Ni, Re | Fe, Ni | Ni, Ru | |

Sixteen of the possible 31 different species include ruthenium.

The PTAB also concluded that Grab discloses "only three different ways of applying the coating to the cutting insert." A2175. Even if this were so (which as noted below, is not correct), this gives a total of 93 possibilities for combinations

38

of binder composition and coating choices (31 different binder compositions times 3 coating techniques = 93).

However, while Grab discloses three coating ***techniques*** – chemical vapor deposition (CVD), moderate temperature chemical vapor deposition (MTCVD), and physical vapor deposition (PVD) – these three different coating techniques are used to apply ***one or more coating layers*** of the ***coating schemes*** in Grab.  A63 (4:56-61).  Grab expressly teaches that these coating techniques may be used in combination with each other, and in fact, never describes an embodiment that applies a coating scheme with only one layer.

For example, Grab discloses one coating scheme with "a base layer of titanium nitride applied to the substrate by CVD to a thickness of 0.5 micrometers, a first mediate layer of titanium carbonitride applied by MTCVD to the base layer to a thickness of 4 micrometers, a second mediate layer of alumina applied to the first mediate layer by CVD to a thickness of 1.5 micrometers, and an outer layer of titanium nitride applied to the second mediate layer by CVD to a thickness of 0.5 micrometers."  A65 (5:46-53).  The exemplary coating schemes in Grab disclose substrates having anywhere from three to five layers applied by one of the three coating techniques.[10]  A65 (7:34-35, 8:55-61).

---

[10] Again, notably, none of these layers is a PVD layer.

39

The PTAB thus failed to consider the layering of coatings in its conclusion that there are "three different coating methods described by Grab and the choice of **one of those three** is a necessary choice to have made the coating of Grab's claim 5." A2175 (emphasis added).  As stated above, Grab actually discloses three to five layers using one or more of the three coating techniques.  In a three-layer embodiment, there are twenty-seven (27) different ways of employing the three coating techniques (using either CVD, MTCVD, or PVD per layer – 3 X 3 X 3 = 27).  A four-layer embodiment has eighty-one (81) different combinations, and a five-layer embodiment allows for two hundred forty-three (243) different combinations.  This amounts to a total of three hundred fifty-one (351) potential coating schemes disclosed by Grab (27 + 81 + 243).  When this sum is multiplied by the thirty-one (31) distinct combinations of binder components disclosed in claim 5 of Grab, it yields a group of **ten thousand, eight hundred eighty-one (10,881)** embodiments, even when just considering the options for coating layers and binder components.

Consequently, the PTAB's conclusion that Grab disclosed a "definite and limited" class of fifteen (15) embodiments was not supported by substantial evidence.  Moreover, when one factors in the other variables Grab teaches that must be considered when constructing a cutting tool, the available options to a person of ordinary skill in the art approach what Ingersoll's declarant candidly

characterized as "infinite." A1111, ¶ 47. Considering only claim 5 of Grab (and

the limitations of independent claim 1 of Grab from which claim 5 depends), the

below represents just some of the choices with which one is faced:



These are only some of the myriad of choices facing one of ordinary skill the

art when reviewing Grab. Grab thus does not describe a "definite and limited"

class of 15 different embodiments, as the PTAB found. Rather, this case is

analogous to *Ruschig* and later caselaw of this Court in cases (*see, e.g.,*

*ArcelorMittal France*, 700 F.3d at 1323; *Sanofi-Synthelabo*, 470 F.3d at 1377-78;

*Eli Lilly & Co.*, 471 F.3d at 1376; *In re Deuel*, 51 F.3d at 1559), based at least on

the number of options in the class and the lack of specificity in Grab as it relates to

ruthenium and PVD coatings.  The PTAB erroneously engaged in the "mechanistic

dissection and recombination" of possibilities disclosed by Grab in arriving at its

conclusion that the distinct species of the '519 patent was anticipated.  Thus, the

PTAB misapplied *Petering* because no definite and limited class is present.

## III.    The PTAB Erred in Rendering the Dependent Claims as Obvious

### A. Claims 1, 15, and 83 Were Only Held To Be Anticipated by Grab

As set forth on pages 21-23 above in Section III of the Statement of Facts,

the PTAB's Decision on Appeal resulted in claims 1, 15, and 83 as only being

rejected as anticipated by Grab.  A2051-A2070, A2059.  The PTAB expressly

indicated that consideration of the obviousness rejections of claims 1, 15 and 83 in

its opinion was unnecessary in view of its conclusion that those claims were

anticipated by Grab.[11]  A2063, A2064, A2066, A2067.

---

[11] The PTAB repeatedly stated that "it is unnecessary for [it] to further consider
independent claims 1, 15, 83, and 89" in an obviousness context since the claims
were purportedly anticipated.  A2063, A2067.  However, claim 89 is included
within a list of claims rejected as obvious.  *See* A2065-2066.  At the least, the
Decision on Appeal is unclear as the PTAB does not provide sufficient analysis
with respect to independent claim 89.

## B. The PTAB has not properly established a *prima facie* case of obviousness.

To support a rejection under § 103, clear articulation of the reasons why the claimed invention would have been obvious is required. *See KSR*, 550 U.S. at 418. Rejections based on obviousness cannot be sustained with mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. *Id.* The mere fact that references can be combined or modified does not render the resultant combination obvious unless the results would have been predictable to one of ordinary skill in the art. *Id* at 402. Furthermore, a bare statement that modifications of the prior art to meet the claimed invention would have been "well within the ordinary skill of the art at the time the claimed invention was made" merely because the references teach that aspects of the claimed invention were individually known in the art is not sufficient to establish a *prima facie* case of obviousness. *Ex parte Levengood*, 28 USPQ2d 1300, 1301 (BPAI 1993); *see also* MPEP § 2143.01.IV (*citing KSR*, 550 U.S. at 418).

Kennametal does not dispute that uncoated or CVD-coated cutting tools that include ruthenium-containing binders were known at the time of the invention. Kennametal does not dispute that cutting tools that included PVD coatings were known. But each of these features was separately known in the art. In affirming the obviousness rejections, the PTAB largely adopts the analysis included within

43

the Examiner's 97-page RAN, which fails to identify *why* any combinations would have been obvious to a person having ordinary skill in the art. For example, no predictable result, nor degree of predictability, has been identified by the Examiner or the PTAB. *See, e.g.*, A1435-1436. No reason has been identified to have prompted one of ordinary skill in the art to combine or substitute elements or apply a prior art technique – particularly in view of the general reluctance of the industry to use substrates with ruthenium-containing binders and having a PVD coating, in part due to the issues associated with cobalt capping. A352-A357 ¶¶ 9-21. The mere fact that a cited reference may possibly be combined or modified does not render the resultant combination obvious. *See, e.g.*, MPEP § 2143.01.III; *Rolls-Royce, Plc. v. United Tech. Corp.*, 603 F.3d 1325, 1339 (Fed. Cir. 2010). In fact, as the declarants have testified, persons of ordinary skill would have been led to use a ruthenium-featured binder and a PVD coating due to enhanced cobalt capping and fears of inadequate adhesion of the coating layer. A351-A354, ¶¶6-13; A364-A365, ¶ 17-18.

Further, any conclusion that it would have been "obvious to try" combining PVD-coated cemented carbide substrates with a ruthenium-featured binder is unsupported. Neither the Examiner nor the PTAB made the required findings to establish a *prima facie* case of obviousness under the obvious-to-try rationale. *See, e.g.*, MPEP § 2143.E. For example, the cited references disclose a significant

44

number of choices to those of ordinary skill in the art.  Ingersoll's own declarant

acknowledges many choices face those of ordinary skill in the art when developing

hardmetals.  *See e.g.*, A1102, ¶ 12 (recognizing "various removal techniques" for

pre-coating steps); A1103, ¶ 15 (recognizing "dozens of possible coating," both

CVD and PVD coating methods, "layers in the coatings may vary from one to

more than a thousand," "thickness within a coating from around a nanometer to

more than ten micrometers"); A1111, ¶ 47 (recognizing "infinite number of

possible hardmetals, in terms of composition, microstructure, coating,

manufacturing methods, and so on").  When one considers these exemplary

variables in view of the broad class disclosed in Grab without an objective reason

to combine or modify the references, it would not be obvious to try combining or

modifying the teachings of Grab without impermissible use of hindsight

reconstruction to render obvious the invention recited in claims 5-8, 19-22, 23, 24,

56, 59, 86, and 90.

### C. The PTAB Erred in Affirming the Rejections of Dependent Claims Because It Failed to Consider Evidence of Secondary Considerations

The PTAB erred by affirming the rejections of independent claims and

dependent claims without considering or setting forth any obviousness analysis of

the corresponding independent claim for the particular combination of references.

In doing so, the PTAB failed to consider the evidence of secondary considerations

in making its obviousness determination of the claims.  Kennametal established

45

that the evidence of secondary considerations was commensurate with the scope of the claims, particularly at least as to the independent claims 1, 15, 83, 89, and 93.

## 1. Legal Standard

Secondary considerations must be considered as part of any obviousness determination. *Eurand,* 676 F.3d at 1075 (stating "[Federal Circuit] court's precedent requir[es] that a fact finder consider all evidence relating to obviousness before finding a patent invalid on those grounds" and that no "burden shifting frame-work" related to fourth *Graham* factor exists). "These objective guideposts are powerful tools for courts faced with the difficult task of avoiding subconscious reliance on hindsight." *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012); *see also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310 (Fed. Cir. 2010) (quotations and citations omitted) (Objective indicia "can be the most probative evidence of non-obviousness in the record, and enables the court to avert the trap of hindsight."). Objective evidence and considerations are intended to prevent a fact finder from falling into the trap and temptation of reading into the prior art the teachings of the claimed invention. *Graham*, 383 U.S. at 36. The proper analysis abiding by the *Graham* factors "requires a form of amnesia that 'forgets' the invention and analyzes the prior art and understanding of the problem at the date of invention." *Mintz*, 679 F.3d at 1379.

2.  Summary of Certain Secondary Considerations

The '519 patent presents comparative data in Example 3 in the specification comparing (1) machining performance of cutting tool inserts with PVD coatings and cemented carbide substrates comprising ruthenium-containing binders with (2) machining performance of cutting tool inserts with PVD coatings and cemented carbide without ruthenium in the binder when machining steel.  A8 (Figure 2); A13 (9:40 to 10:57).  The PVD-coated ruthenium-featured cutting tools exhibited 55% and 245% longer tool lifetimes than comparable PVD-coated cutting tools lacking ruthenium.  *Id.*  The PVD-coated ruthenium-featured cutting tools exhibited over 5 to 6 times longer tool lifetimes than comparable CVD-coated ruthenium-featured cutting tools.  *Id.*  This improvement was unexpected and significant as confirmed by expert testimony submitted by Kennametal.  A372-A373, ¶¶ 12-14.  These results were particularly surprising and unexpected "given that it was not believed possible to successfully and reproducibly coat ruthenium-feature cutting tool substrates with stable and adherent PVD coatings to produce a cutting tool of consistent quality, let alone a cutting tool providing superior machining performance."  A358, ¶ 22; *see also* A366, ¶ 20.  These surprising and unexpected results are attributable to the cutting tools and methods recited in the claims.  *See, e.g.*, A1659-A1660 (citing A349-A358; A359-A367; & A368-A373).

3. <u>Failure to Consider Secondary Considerations for Rejection of Independent Claim Prevents Finding of Obviousness of Dependent Claims.</u>

By expressly stating it was "unnecessary" for it to consider and reach any obviousness determinations of claims 1, 15, and 83, the PTAB ***admitted*** that it did not consider any secondary considerations with respect to claims 1, 15, and 83 – as these claims were only rejected as anticipated. Thus, any obviousness rejection of any dependent claim further limiting claims 1, 15, and 83 entered by the PTAB did not appropriately consider secondary considerations, particularly as to any rejection *not* based on Grab as a primary reference. Further, the PTAB did not consider evidence of secondary considerations of claims 89 and 93 in entering any obviousness rejections of independent claims 89 and 93.

For example, the PTAB rejected dependent claims 33, 34, 37-44, 47, 48, and 84 as obvious in view of Leverenz. A2065. To reject a claim based on prior art, the PTAB must consider the limitations of the particular claim (*e.g.*, claim 33) and any limitations of any claim from which the dependent claim depends (*e.g.*, claim 1). *See, e.g.*, *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319-20 (Fed. Cir. 2007). However, the PTAB expressly did not make any determination of whether independent claims 1, 15, or 83 were obvious in view of Leverenz. A2064. Rather, the PTAB skipped this analysis and made no determination or conclusion of obviousness of claim 1 based on Leverenz, and in doing so, did not consider any

48

secondary considerations in view of claim 1.  Because the dependent claims were

rejected as obvious, secondary considerations must be considered as to both those

dependent claims and as to the independent claim from which they depend.  In

other words, even though claim 1 was rejected as anticipated based on Grab, the

rejection of claim 33 as obvious based on Leverenz necessarily required an

analysis of the obviousness of claim 1 based on Leverenz, including the impact of

secondary considerations.  The PTAB did neither.

Instead, the PTAB suggested that Kennametal had not established a nexus

between the limitations in the dependent claims and the objective evidence.

A2064.  However, the PTAB failed to consider the secondary considerations in

view of at least the ***independent*** claims – a necessary step that must be undertaken

in order to reject any dependent claim therefrom because each dependent claim

includes each and every limitation recited in its respective independent claim.

*See, e.g.*, *Hartness Int'l Inc. v. Simplimatic Eng'g. Co.*, 819 F.2d 1100 (Fed. Cir.

1987); *In re Fine*, 837 F.2d 1071 (Fed. Cir. 1988); *see also* MPEP § 2143.03

(stating a claim that depends from a nonobvious independent claim is nonobvious).

By failing to consider the secondary considerations in its rejections of claims 89

and 93 as obvious, the PTAB failed to undertake the necessary steps in analyzing

those claims.

Moreover, this substantial error occurs for each group of rejections of dependent claims based on Leverenz, AAPA, Tracy, Schachner, and Stoll. The PTAB expressly stated for each rejection that it is "unnecessary to reach the obviousness rejection" since claims 1, 15, and 83 were allegedly anticipated by Grab. A2064, A2066, & A2067. Thus, by failing to consider secondary considerations for claims 1,15, and 83 for these particular combination of references, the PTAB has not carried out the required analysis to reject any claim *not* based on Grab as a primary reference depending from claims 1, 15, or 83 as obvious. This failure and faulty conclusion are grounds for overturning the decision below.

## CONCLUSION

The PTAB erred in (1) reversing the Examiner's determination not to adopt claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89 as anticipated by Grab; and (2) affirming all of the rejections of dependent claims 2-14, 16-31, 33-52, 56-59, 84-88, and 90 under 35 U.S.C. § 103(a) as being unpatentable. Accordingly, this Court should reverse the PTAB's decision, and confirm patentability of the pending claims.

Respectfully submitted,

/s/*Steven D. Moore*
Steven D. Moore
J. Jason Link
N. Dean Powell Jr.

50

Kilpatrick Townsend & Stockton LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7431
smoore@kilpatricktownsend.com
jlink@kilpatricktownsend.com
dpowell@kilpatricktownsend.com

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document with the Clerk of the United

States Court of Appeals for the Federal Circuit via the CM/ECF system and served

a copy on counsel of record, this 12th day of May 2014, by the CM/ECF system

and electronic mail.


/s/ *Steven D. Moore*
Steven D. Moore
Kilpatrick Townsend & Stockton LLP
1001 West 4th Street
Winston-Salem, NC 27101
Telephone:  (336) 607-7431
smoore@kilpatricktownsend.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certified that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B). Exclusive of the portion exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), this brief contains 11,243 words as counted by the word-processing system used to prepare the brief.

/s/*Steven D. Moore*
Steven D. Moore

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**ITEM**                                                                 **PAGE**

Decision on Appeal of the Patent Trial and Appeal Board,
United States Patent and Trademark Office for *Inter Partes*
Reexamination Control No. 95/001,417, Appeal No. 2013-
001102, entered on May 6, 2013 ...................................................... A2051 – A2070

Decision on Rehearing of the Patent Trial and Appeal Board,
United States Patent and Trademark Office for *Inter Partes*
Reexamination Control No. 95/001,417, Appeal No. 2013-
001102, entered on November 12, 2013 .......................................... A2172 – A2180

U.S. Patent No. 7,244,519 ......................................................................... A6 – A22

Listing of Claims ............................................................................ A1664 – A1676



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,417 | 08/16/2010 | 7244519 | TMP-2060 RE | 3598 |

25074        7590        05/06/2013
ALLEGHENY TECHNOLOGIES
1000 SIX PPG PLACE
PITTSBURGH, PA 15222

| EXAMINER |
|---|
| DIAMOND, ALAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3991 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/06/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

INGERSOLL CUTTING TOOL COMPANY
Requester and Appellant and Cross-Respondent

v.

TDY INDUSTRIES
Patent Owner and Respondent and Cross-Appellant

———————

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519
Technology Center 3900

———————

Before HUBERT C. LORIN, LORA M. GREEN, and RICHARD M. LEBOVITZ,
*Administrative Patent Judges*.

LEBOVITZ, *Administrative Patent Judge*.

This is a decision on appeal by the Patent Owner from the Patent Examiner's decision to reject pending claims 1-31, 33-52, 56-59, 83-90, and 93 in an inter partes reexamination of U.S. Patent No. 7,244,519. This is also a decision on an appeal by the Third-Party Requester from the Patent Examiner's decision not to adopt proposed rejections of claims 1-4, 9-18, 23, 24, 27-31, 33-38, 45, 46, 49, 50,

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

58, 83-85 and 89.  The Board's jurisdiction for this appeal is under 35 U.S.C.

§§ 6(b), 134, and 315.  We affirm-in-part.


## BACKGROUND

The patent in dispute in this appeal is U.S. Patent No. 7,244,519 B2
(hereinafter, "the '519 patent"), which issued July 17, 2007.  The claims are drawn
to PVD (physical vapor deposition) coated ruthenium cutting tools comprising a
cemented carbide substrate. "Cemented carbide cutting tools and inserts (generally
'cutting tools') are commonly employed in machining operations such as, for
example, cutting, drilling, reaming, countersinking, counterboring, end milling,
turning, grooving, threading, and tapping."  ('519 patent, col. 1, ll. 15-19.)

A corrected request for *inter partes* reexamination under 35 U.S.C. §§ 311-
318 and 37 C.F.R. §§ 1.902-1.997 for the '519 patent was filed August 16, 2010 by
a Third-Party Requester (Request for *Inter Partes* Reexamination).  The Third-
Party Requester is Ingersoll Cutting Tool Company (Requester Appeal Br. 1, dated
June 25, 2012).  The Patent Owner is TDY Industries, Inc. (Patent Owner Appeal
Br. 1, dated June 20, 2012).  An oral hearing was held on _____, the transcript for
which will be entered into the record in due course.

There are four independent claims which are pending in this inter partes
reexamination.  Claims 1 and 15 are representative and reproduced below
(underlining and brackets relative to original patent claim):

1.    (Amended) A cutting tool, comprising:

a cemented carbide substrate, wherein the substrate comprises
hard particles and a binder, and the binder comprises ruthenium; and
at least <u>one physical vapor deposition</u> coating on at least a
portion of the substrate[, wherein the coating has the characteristics of
a coating applied by physical vapor deposition].

2

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

15.    A method of coating a substrate, comprising:
applying a coating on a cemented carbide substrate by physical vapor deposition, wherein the substrate comprises hard particles and a binder and the binder comprises ruthenium.

## I. APPEAL BY REQUESTER OF NON-ADOPTED REJECTIONS

Requester appeals the Examiner's decision not to adopt Requester's proposed rejections under 35 U.S.C. § 102(b) (Requester Appeal Br. 5). The following are the appeal non-adopted rejections:

A.  Claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85 and 89, as anticipated by Grab.[1]

B.  Claims 1-4, 9-18, 23, 27-31, 33-38, 45, 46, 58, 83-85 as anticipated by Leverenz.[2]

PRINCIPLES OF LAW

Keeping in mind that the Karrer patent is a publication addressed to those of ordinary skill in this art, it is our opinion that the pattern of Karrer's specific preferences in connection with his generic formula constitutes a description of a definite and limited class of compounds . . .

We think the Karrer patent, as a printed publication, describes to one skilled in this art not only the broad class but also this much more limited class within that broad class, and we think it is immaterial that Karrer did not expressly spell out the limited class as we have done here. It is our opinion that one skilled in this art would, on reading the Karrer patent, at once envisage each member of this limited class, even though this skilled person might not at once define in his mind the formal boundaries of the class as we have done here.

---

[1] George P. Grab et al., U.S. 6,554,548 B1 (Apr. 29, 2003).
[2] Roy V. Leverenz, U.S. 6,214,247 B1 (Apr. 10, 2001).

3

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

*In re Petering and Fall*, 301 F.2d 676, 681 (CCPA 1962).

> Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983). The requirement that the prior art elements themselves be "arranged as in the claim" means that claims cannot be "treated … as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning." *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1459 (Fed. Cir. 1984). "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. §102." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) (emphasis added).

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010).

## I.A. ANTICIPATION BY GRAB

### Findings of Fact

*Grab patent*

FF1.  Grab describes a "coated cutting insert" for use in metal cutting applications (Grab, col. 1, ll. 7-16; 32-36).

FF2.  The coated cutting insert includes a substrate that has a surface zone of binder alloy (Grab, col. 2, ll. 32-35).

FF3. "The substrate 18 comprises a cemented carbide material. One exemplary substrate is a cemented (cobalt-chromium binder alloy) tungsten carbide that contains one or more carbide forming elements such as, for example, titanium, tantalum, niobium, zirconium, and hafnium."  (Grab, col. 2, 44-48.)

4

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

FF4.  "Other elements may optionally be a component of the binder alloy wherein these elements include tungsten, iron, nickel, ruthenium, and **rhenium**." (Grab, col. 2, 55-57; emphasis added)

FF5.  "Generally speaking, one or more of the coating layers of the coating schemes are applied by chemical vapor deposition (CVD) and moderate temperature chemical vapor deposition (MTCVD). However, applicants also contemplate that one or more layers of a coating scheme may be applied by physical vapor deposition (PVD)."  (Grab, col. 4, ll. 56-61.)

FF6.  Claims 1 and 5 of Grab read as follows:

1. A coated cutting insert comprising:

a rake face and a flank face, a cutting edge at the juncture of the rake face and the flank face;

the cutting insert having a hard refractory coating and a substrate wherein the coating is adherently bonded to the substrate;

the substrate comprising a tungsten carbide-based material comprising a bulk  composition of at least about 70 weight percent tungsten and carbon, between about 3 weight percent and about 12 weight percent cobalt, and at least 0.09 weight percent chromium;

the cobalt and the chromium forming a binder alloy . . .


5. The coated cutting insert of claim 1 wherein the binder alloy further includes one or more of tungsten, iron, nickel, ruthenium, and rhenium.


*'519 patent*

FF7

The hard particles may be, for example, carbides, nitrides, borides, silicides, or oxides of elements within groups IVB through VIB of the periodic table. A common example is tungsten carbide.

(Col. 1, ll. 29-33.)

5

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

Analysis

The issue is whether Grab describes all the elements of the claimed subject matter as arranged in the claim. *Therasense*, 593 F.3d at 1332. First, we shall identify the elements in instant claim 1. Second, we will determine whether Grab's describes these elements as arranged in the claim.

Claim 1 of the '519 patent comprises the following elements:

[1] "A cutting tool, comprising:"

[2] "a cemented carbide substrate, wherein the substrate comprises"

[3] "hard particles" and

[4] "a binder,"

[5] "the binder comprises ruthenium" and

[6] "at least one physical vapor deposition coating on at least a portion of the substrate."

Claim 5 of Grab depends on claim 1 of Grab and therefore incorporates all its limitations. Grab's Claim 5 describes elements [1] through [5] of claim 1 of the '519 patent. The correspondence between Grab's claim 5 (FF6) and the '519 patent claim is as follows:

● [1] "A cutting tool, comprising:" corresponding to the "coated cutting insert" of Grab claim 5.

● [2] "a cemented **carbide substrate**, wherein the substrate comprises" corresponding to "the **substrate** comprising a **tungsten carbide-based** material comprising a bulk composition of at least about 70 weight percent tungsten and carbon, between about 3 weight percent and about 12 weight percent cobalt, and at least 0.09 weight percent chromium" of Grab claim 5.

6

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

● [3] "hard particles" corresponding to the "**tungsten carbide**" (FF7) of the substrate of Grab claim 5.

● [4],[5] "a **binder**" comprising "**ruthenium**" corresponding to "the **binder alloy** further includes one or more of tungsten, iron, nickel, **ruthenium**, and rhenium" of Grab's claim 5. Ruthenium is one of five metals named in claim 5, and claim 5 specifically requires "one of more" of the five.

Element [6] of the '519 patent claim 1 is "at least one physical vapor deposition **coating** on at least a portion of the substrate." Grab's claim 5 comprises a "cutting insert having a hard refractory **coating**," but does not specifically recite that the coating is "physical vapor deposition coating." However, Grab discloses only three different ways of applying the coating to the cutting insert, one of which is physical vapor deposition (PVD), i.e., CVD, MTCVD, and PVD (FF5). While CVD and MTCVD are characterized by Grab as preferred ways of applying the coating, there are only three different coating methods described by Grab and the choice of one of those three is a necessary choice to have made the coating of Grab's claim 5.

If one binder metal (element [5] of claim 1) of the five were selected one at a time, and coated (element [6] of claim 1) by either of the three coating methods specifically identified by Grab (FF5), there are about 15 different embodiments – a "definite and limited" class, each of which would be immediately "envisage[d]" by one of ordinary skill in the art upon reading claim 5 of Grab. *Petering*, 301 F.2d at 681.

Patent Owner contends that Grab does not describe articles or methods including the claimed elements "arranged or combined in the same way as in the claim." (PO Respondent Br. 5, quoting from Net *MoneyIN v. VeriSign*, 545 F.3d

7

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

1359, 1370 (Fed. Cir. 2008)).  Patent Owner contends: "Grab does not show the combination of ruthenium-containing substrates and PVD coatings.  Instead, Grab merely discloses ruthenium and PVD coatings as separate optional features that are not linked in any way."  (PO Respondent Br. 6.)

As explained above, this position is not factually supported.  Grab's claim 5 is drawn to an embodiment which comprises all the elements of claim 1, except for specifying that the recited "hard refractory coating" is formed by PVD.  However, there are only three coating schemes specifically disclosed by Grab, and one of these PVD (FF5).  The fact that a "coating" is recited in Grab's claim 5 is a specific hook back into the Grab disclosure for the further description of how that coating is applied.  This is not a "speculative" or a "theoretical possibility" as argued by Patent Owner (PO Respondent Br. 7), but a definite path to a description of the claimed invention.

For the foregoing reasons, we reverse the Examiner's determination not to adopt the rejection based on Grab as an anticipatory reference.


Claim 15, 83, 89

Claims 15, 83, and 89 are independent claims.  Claims 15 and 83 are method claims.  Claim 89 is directed to a cutting tool.  Each of the claims, as does claim 1, requires a binder with ruthenium and a PVD coating.  The Requester relied on the same evidence of anticipation for claims 15, 83, and 89 as for claim 1.  Neither the Examiner nor the Patent Owner distinguished claims 15, 83, and 89 from claim 1. We find the evidence is sufficient to establish that the subject matter of claims 15, 83, and 89 is anticipated by Grab, and reverse the Examiner's determination not to adopt the rejection.

8

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

Claims 2-4, 9-14, 16-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, and 85

Claims 2-4, 9-14, 16-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, and 85 are dependent claims. Requester provided support for where each limitation of the dependent claims could be found in Grab (Requester Appeal Br. 16-18). Neither Examiner nor Patent Owner challenged Requester's evidence. We find the evidence persuasive and sufficient to establish that dependent claims 2-4, 9-14, 16-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, and 85 are anticipated by Grab, and reverse the Examiner's determination not to adopt the rejection.

## I.B. ANTICIPATION BY LEVERENZ

The Third Party Requester contends that the Examiner erred in not adopting the proposed rejection of claims 1-4, 9-18, 23, 27-31, 33-38, 45, 46, 58, 83-85 as anticipated by Leverenz. The Requester contends that Example 1 of Leverenz discloses a tungsten carbide substrate having **a cobalt binder** and the **hard particles** titanium carbide (TiC), tantalum carbide (TaC) and Niobium Carbide (NbC) (Requester Appeal Br. 20). Furthermore, Requester contends that Leverenz in Example 1 provides a coating to the substrate using CVD. The Requester acknowledges that Leverenz in Example 1 does not describe ruthenium in the binder or a PVD coating as claimed, but argues with respect to Example 1, "Leverenz suggests one skilled in the art to employ PVD and two other coating processes in lieu of CVD for coating a substrate, the binder of which, in addition to cobalt, can include one or more of 15 different elements, including ruthenium." (*Id.*)

9

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

The Examiner did not adopt the anticipation rejection because "[n]one of Leverenz's examples prepared at cols. 9-13 contains ruthenium or uses PVD. In view of the selections for Ru and PVD that need to be made and in view of said examples, Leverenz does not anticipate the claims." (RAN 17.) The Examiner noted Requester had cited testimony that PVD coatings and ruthenium had been used in the art, but responded that it does "not take away from the fact that ruthenium is optional and selected from a list of materials, and PVD is selected from other processes." (RAN 18)

Specific examples, while helpful, are not required to establish anticipation. For example, a very small genus can be a disclosure of each species within the genus. *Petering*, 301 F.2d at 682; *see also Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1380 (Fed. Cir. 2001) ("[T]he disclosure of a small genus may anticipate the species of that genus even if the species are not themselves recited."); *WM. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1361-62 (Fed. Cir. 2012). As held in *Petering*, in order to anticipate, one skilled in the art must be able to "at once envisage" the claimed structure in the disclosure. *Petering*, 301 F.2d at 681.

In this case, however, we agree with the Examiner, that Leverenz does not anticipate the claims. In particular, Leverenz does not contain explicit disclosure that ruthenium should be included in the binder of the substrate of Example 1 nor that PVD would be suitable to prepare the coatings in Example 1. Leverenz describes ruthenium (atomic number 44) as an optional element that may be included in the binder:

> The binder material of the present composite material may include one or a combination of more than one of cobalt, nickel, copper, and iron. In addition to cobalt, nickel, copper, and/or iron, the binder

10

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

> material may include other elements and compounds as are known in
> the art. **Such other elements** include, for example, those within
> Group VIII of the periodic table (elements having atomic numbers 26-
> 28, **44**-46, and 76-78), tungsten, zinc, and rhenium.

Leverenz, col. 5, ll. 40-48 (emphasis added.)

Example 1 does not specifically identify the binder in Leverenz's Example
1, but the Examiner did not dispute the Requester's assertion it is the cobalt
disclosed at column 9, line 27. Instant claim 1 also requires ruthenium in the
binder. The Requester did not provide a sufficient explanation as to why a skilled
worker would have envisioned Example 1 specifically with ruthenium, other than
saying that ruthenium is a material that "may" be present in the binder as taught at
column 5, lines 40-48 (Requester Respondent Br. 19 & 20). However, Example 1
is described as complete, and the Requester did not give an adequate reason as to
why one of ordinary skill in the art would have understood it to include any of the
additional, *optional*, binders disclosed Leverenz. While it is true that ruthenium is
disclosed as an optional binder material, it has not been established that one of
ordinary skill in the art would have immediately envisaged it as part of Example 1.

For a reference to be anticipatory, it must disclose all the limitations of the
claimed invention arranged as in the claim, not merely as a catalog of separate
parts. *Therasense*, 593 F.3d at 1332. In this case, Requester has not provided
sufficient evidence that the separate disclosure about ruthenium and other optional
binder materials would have been combined with Example 1 of Leverenz to
provide a description of the claimed subject matter. Similarly, Example 1 is
narrowly focused on CVD for applying the coatings to the substrate, and
insufficient reason has been provided by Requester as to why the skilled worker
would have looked elsewhere in the Leverenz disclosure of using other coating
application techniques, such as PVD, to replace the CVD method of Example 1.

11

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

Testimony was provided by Kenneth J.A. Brookes and Dennis Quinto, Ph.D. that PVD coatings and ruthenium binders were known in the art prior to the claimed invention (Requester Respondent Br. 13-16). However, this testimony does not establish that the skilled worker, reading Leverenz, would have envisioned all the elements of claim 1 arranged as in the claim.

## II. APPEAL BY PATENT OWNER

Patent Owner appeals the Examiner's determination to reject all the pending claims as obvious over different combinations of prior art (Patent Owner App. Br. 4-6).

## II.A. GRAB

Claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85 and 89 stand rejected under 35 U.S.C. 103(a) as obvious in view Grab (RAN 9) (PO Appeal Br. 4, Rejection 1)

We determined that claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85 and 89 are anticipated by Grab. Since these claims have already been found to be unpatentable over Grab for lack of novelty, it is unnecessary for us to reach the obviousness rejection.

## II.B. GRAB IN VIEW OF ADDITIONAL PRIOR ART

Dependent claims 5-8, 19-22, 23, 24, 25, 26, 56, 57, 59, 86, and 90 stand rejected as obvious in view of Grab and additionally cited prior art (Rejections 2-5 summarized on page 4-5 of PO Appeal Br. 4-5). The Examiner provided evidence as to why the limitations are obvious in view of the combination of Grab with additional prior art (RAN 11-16), which we find to be factually supported.

12

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

Patent Owner provided evidence of unexpected results obtained with PVD-coated ruthenium cutting tools (Patent Owner Appeal Br. 9). However, we found that a preponderance of the evidence established that claims to this combination were anticipated by Grab, and thus secondary considerations are inapplicable.

Claims 5-8, 19-22, 23, 24, 25, 26, 56, 57, 59, 86, and 90 comprise further limitations in addition to the recited PVD and ruthenium features. Patent Owner did not demonstrate that these further limitations were responsible for the asserted unexpected results. "For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC, Inc.,* 57 F.3d 1573, 1580 (Fed. Cir. 1995). No nexus was established between the limitations recited in the dependent claims and the asserted unexpected results. As Patent Owner did not provide additional arguments as to why the dependent claims are patentable over Grab, we shall affirm the rejections for the sufficient reasons given by the Examiner.

## II. C. LEVERENZ

Claims 1-4, 9-18, 23, 27-31, 33-48, 58, and 83-85 are rejected under 35 U.S.C. 103(a) as obvious in view Leverenz (Rejection 6, PO Appeal Br. 5).

We determined that claims 1-4, 9-18, 23, 27-31, 58, 83, and 85 are anticipated by Grab. Since these claims have already been found to be unpatentable over Grab for lack of novelty, it is unnecessary for us to reach the obviousness rejection over the Leverenz publication.

13

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

Claims 33, 34, 37-44, 47, 48, 84

Claims 33, 34, 37-44, 47, 48, 84 were found by the Examiner to be obvious in view of Leverenz. The Examiner provided an explanation of how the limitations of these claims were suggested Leverenz's teachings (RAN 18-20), which we find to be factually supported.

Patent Owner provided evidence of unexpected results obtained with PVD-coated ruthenium cutting tools (Patent Owner Appeal Br. 9). However, we found that a preponderance of the evidence established that claims to this combination were anticipated by Grab. Claims 33, 34, 37-44, 47, 48, 84 comprise limitations in addition to the PVD and ruthenium limitations. Patent Owner did not demonstrate that these additional limitations were responsible for the asserted unexpected results. "For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC, Inc.,* 57 F.3d 1573, 1580 (Fed. Cir. 1995). No nexus was established between the limitations recited in the dependent claims and the asserted unexpected results. As Patent Owner did not provide additional arguments as to why the dependent claims are patentable over Leverenz, we shall affirm the rejection for the sufficient reasons given by the Examiner.

## II.D. LEVERENZ IN VIEW OF ADDITIONAL PRIOR ART

Claim 24, 25, 26, 49-52, 56, 57, 59, 86-90, and 93 stand rejected as obvious in view of Leverenz and additionally cited prior art (Rejections 7-9 and 11-15 summarized on page 5 of Patent Owner Appeal Br.). The Examiner provided an explanation of how the limitations of these claims were suggested Leverenz's teachings (RAN 20-30), which we find to be factually supported. As already

14

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

discussed, Patent Owner did not establish a nexus between the unexpected results and the further limitations recited in the claims. We affirm the rejection for the sufficient reasons given by the Examiner.

Claims 1-23, 27, 31, 33-48, 58 and 83-85 are rejected under 35 U.S.C. 103(a) as obvious over Leverenz in view of Shing (RAN 23; Rejection 10 on page 5 of PO Appeal Br.). The independent claims 1, 15, and 83 have already been found to be anticipated by Grab and thus we shall not further address them. With respect to the dependent claims not already addressed, the Examiner provided evidence if their obviousness, which we find to be factually supported (RAN 24), and unchallenged by Patent Owner. As already discussed, Patent Owner did not establish a nexus between the unexpected results and the further limitations recited in the claims. We affirm the rejection for the sufficient reasons given by the Examiner.

## II.E.  ADMITTED PRIOR ART, TRACY, SCHACHNER, AND STOLL REJECTIONS

For each of the rejections based on Admitted Prior Art, Tracey,[3] Schachner,[4] and Stoll,[5] Patent Owner argued that the cited publications "do not contain any technological information linking ruthenium additions and PVD coatings, or addressing the technical problems that would prevent the successful application of PVD coatings to cemented carbide substrates comprising ruthenium-containing

---

[3] V.A. Tracey et al., Development of Tungsten Carbide-Cobalt-Ruthenium Cutting Tools For Machine Steels. 14 Modern Developments in Powder Metallurgy 281 (June 1980).
[4] Herbert Schachner et al., U.S. 4,734,339 (Mar. 29, 1988).
[5] William M. Stoll et al., U.S. 5,603,075 (Feb. 11, 1997).

15

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

binders by the mere application of ordinary skill before the present invention" (PO
Appeal Br. 20, 21, and 22) (Rejections 16-33 on pages 5-6 of PO Appeal Br.).
However, the combination of a ruthenium binder and PVD coating on a carbide
substrate was found to have been described by Grab (see supra at p. 7-8).
Consequently, it is unnecessary for us to further consider independent claims 1, 15,
83, and 89 drawn to this combination since we have determined that these claims
are anticipated by Grab.

   With respect to the dependent claims, the Examiner provided evidence of
their obviousness, which we find to be factually supported (RAN 30-54), and
unchallenged by Patent Owner.  As already discussed, Patent Owner did not
establish a nexus between the unexpected results and the further limitations recited
in the claims.

## SUMMARY

### I. APPEAL BY REQUESTER

   The determination by the Examiner not to adopt the anticipation rejections
of claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85 and 89, as
anticipated by Grab is reversed.  A decision to reverse the Examiner's
determination not to adopt a rejection is a new ground of rejection.  37 C.F.R.
§ 41.77(b).

   The determination by the Examiner not to adopt the anticipation rejections
of claims 1-4, 9-18, 23, 27-31, 33-38, 45, 46, 58, 83-85 as anticipated by Leverenz
is affirmed.

### II. APPEAL BY PATENT OWNER

    Obviousness rejections 2-33 as they pertain to dependent claims 2-14, 16-
31, 33-52, 56-59, 84-88, 90, and 93 are affirmed.  Obviousness rejections of claims

16

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

1, 15, 83, 89, and 93 were not reached because these claims were found to be
anticipated by Grab.

## NEW GROUNDS OF REJECTION

37 C.F.R. § 41.77(a) states that "[t]he reversal of the examiner's
determination not to make a rejection proposed by the third party requester
constitutes a decision adverse to the patentability of the claims which are subject to
that proposed rejection which will be set forth in the decision of the Board of
Patent Appeals and Interferences as a new ground of rejection."

This decision contains new grounds of rejection pursuant to 37 C.F.R.
§ 41.77(b) which provides that "[a]ny decision which includes a new ground of
rejection pursuant to this paragraph shall not be considered final for judicial
review."  Accordingly, no portion of the decision is final for purposes of judicial
review.  A requester may also request rehearing under 37 C.F.R. § 41.79, if
appropriate, however, the Board may elect to defer issuing any decision on such
request for rehearing until such time that a final decision on appeal has been issued
by the Board.

For further guidance on new grounds of rejection, see 37 C.F.R. § 41.77(b)-
(g).  The decision may become final after it has returned to the Board.  37 C.F.R.
§ 41.77(f).

37 C.F.R. § 41.77(b) also provides that the Patent Owner, WITHIN ONE
MONTH FROM THE DATE OF THE DECISION, must exercise one of the
following two options with respect to the new grounds of rejection to avoid
termination of the appeal as to the rejected claims:

(1) *Reopen prosecution.*  The owner may file a response requesting
reopening of prosecution before the examiner.  Such a response must be either an
amendment of the claims so rejected or new evidence relating to the claims so
rejected, or both.

(2) *Request rehearing.*  The owner may request that the proceeding be
reheard under § 41.79 by the Board upon the same record. …

Any request to reopen prosecution before the examiner under 37 C.F.R.
§ 41.77(b)(1) shall be limited in scope to the "claims so rejected."  Accordingly, a
**request to reopen prosecution is limited** to issues raised by the new ground(s) of
rejection entered by the Board.  A request to reopen prosecution that includes
issues other than those raised by the new ground(s) is unlikely to be granted.
Furthermore, should the patent owner seek to substitute claims, there is a

17

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

presumption that only one substitute claim would be needed to replace a cancelled claim.

A requester may file comments in reply to a patent owner response. 37 C.F.R. § 41.77(c). Requester comments under 37 C.F.R. § 41.77(c) shall be **limited** in scope to the issues raised by the Board's opinion reflecting its decision to reject the claims and the patent owner's response under paragraph 37 C.F.R. § 41.77(b)(1). A newly proposed rejection is not permitted as a matter of right. A newly proposed rejection may be appropriate if it is presented to address an amendment and/or new evidence properly submitted by the patent owner, and is presented with a brief explanation as to why the newly proposed rejection is now necessary and why it could not have been presented earlier.

Compliance with the page limits pursuant to 37 C.F.R. § 1.943(b), for all patent owner responses and requester comments, is required.

The examiner, after the Board's entry of a patent owner response and requester comments, will issue a determination under 37 C.F.R. § 41.77(d) as to whether the Board's rejection is maintained or has been overcome. The proceeding will then be returned to the Board together with any comments and reply submitted by the owner and/or requester under 37 C.F.R. § 41.77(e) for reconsideration and issuance of a new decision by the Board as provided by 37 C.F.R. § 41.77(f).

Requests for extensions of time in this *inter partes* reexamination proceeding are governed by 37 C.F.R. § 1.956. *See* also 37 C.F.R. § 41.79.

<u>AFFIRMED-IN-PART</u>

<u>NEW GROUNDS UNDER § 41.77(b)</u>

18

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

ack

CC:

Patent Owner:

Allegheny Technologies
1000 Sic PPG Place
Pittsburgh, PA 15222

Third Party Requester:

Womble Carlyle Sandridge & Rice, PLLC
ATTN: Patent Docketing
P.O. Box 7037
Atlanta, GA 30357-0037

19

 United States Patent and Trademark Office

**UNITED STATES DEPARTMENT OF COMMERCE**
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO./ CONTROL NO. | FILING DATE | FIRST NAMED INVENTOR / PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/001,417 | 08/16/2010 | 7244519 | |

ALLEGHENY TECHNOLOGIES
1000 SIX PPG PLACE
PITTSBURGH, PA 15222

| EXAMINER | |
|---|---|
| Diamond, Alan | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3991 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/12/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

MOD PTOL-90A (Rev. 06/08)

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

INGERSOLL CUTTING TOOL COMPANY
Requester and Appellant and Cross-Respondent

v.

TDY INDUSTRIES
Patent Owner and Respondent and Cross-Appellant

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519
Technology Center 3900

Before HUBERT C. LORIN, LORA M. GREEN, and RICHARD M. LEBOVITZ,
*Administrative Patent Judges.*

LEBOVITZ, *Administrative Patent Judge.*

## DECISION ON REHEARING

In the Decision on Appeal dated May 6, 2013 ("Dec."), we reversed the
Examiner's determination not to adopt the rejection of claims 1-4, 9-18, 23, 24, 27-
31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89 as anticipated by Grab.[1]  A decision to
reverse the Examiner's determination not to adopt a rejection is a new ground of

---

[1] George P. Grab et al., US 6,554,548 B1 (issued Apr. 29, 2003).

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

rejection. 37 C.F.R. § 41.77(b). Consequently, a new ground of rejection of claims 1-4, 9-18, 23, 24, 27-31, 35, 36, 45, 46, 49, 50, 58, 83, 85, and 89 was made under 35 U.S.C. § 102(b) as anticipated by Grab. Patent Owner requests rehearing of this decision under 37 C.F.R. § 41.79 (Request for Rehearing ("Req. Reh'g") dated June 5, 2013).

Patent Owner contends the Board misapprehended or overlooked two points. First, Patent Owner contends that the Board overlooked and misapprehended that Grab fails to provide evidence of prior invention (Req. Reh'g 3). Second, Patent Owner contends that the Board overlooked that Grab does not enable the production of ruthenium-containing substrates having a PVD coating (id.).

1. Does Grab not provide evidence of prior invention?

Claim 1 of the '519 patent comprises the following elements:

(1) "A cutting tool, comprising:"

(2) "a cemented carbide substrate, wherein the substrate comprises"

(3) "hard particles" and

(4) "a binder,"

(5) "the binder comprises ruthenium" and

(6) "at least one physical vapor deposition [PVD] coating on a least a portion of the substrate."

In the Decision, we found Grab's claim 5 describes elements (1) through (5) of claim 1 of the '519 patent, and explained the correspondence between Grab's claim 5 and the '519 patent (Decision 6-7). Grab's claim 5, and claim 1 upon which it depends, are reproduced below:

2

A 2174

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

1. A coated cutting insert comprising:

a rake face and a flank face, a cutting edge at the juncture of the rake
    face and the flank face;
the cutting insert having a hard refractory coating and a substrate
    wherein the coating is adherently bonded to the substrate;
the substrate comprising a tungsten carbide-based material comprising
    a bulk composition of at least about 70 weight percent tungsten
    and carbon, between about 3 weight percent and about 12
    weight percent cobalt, and at least 0.09 weight percent
    chromium;
the cobalt and the chromium forming a binder alloy . . .

5. The coated cutting insert of claim 1 wherein the binder alloy further
includes one or more of tungsten, iron, nickel, ruthenium, and
rhenium.

With respect, to element (5), we found that ruthenium is one of five metals
named in Grab's claim 5, and claim 5 specifically requires "one or more" of the
five (Decision 7). With respect to element (6), we found that Grab's claim 5
comprises a "cutting insert having a hard refractory coating," but we
acknowledged that claim 5 does not specifically recite that the coating is "physical
vapor deposition coating." (*Id.*) However, we found that Grab discloses only three
different ways of applying the coating to the cutting insert, one of which is
physical vapor deposition (PVD) (*id.*). "While CVD and MTCVD are
characterized by Grab as preferred ways of applying the coating, there are only
three different coating methods described by Grab and the choice of one of those
three is a necessary choice to have made the coating of Grab's claim 5." (*Id.*). We
concluded:

If one binder metal (element [5] of claim 1) of the five were selected
one at a time, and coated (element [6] of claim 1) by either of the
three coating methods specifically identified by Grab (FF5), there are
about 15 different embodiments – a "definite and limited" class, each

3

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

> of which would be immediately "envisage[d]" by one of ordinary skill
> in the art upon reading claim 5 of Grab. [*In re Petering*, 301 F.2d
> 676,681 (CCPA 1962).]

(*Id.*)

Quoting from the following passage reproduced below, Patent Owner

contends that "Grab discloses the mere *contemplation* that PVD *may* work as an

alternative to the extensively described CVD and MTCVD" (Req. Reh'g 6):

> Generally speaking, one or more of the coating layers of the coating
> schemes are applied by chemical vapor deposition (CVD) and
> moderate temperature chemical vapor deposition (MTCVD).
> However, applicants also contemplate that one or more layers of a
> coating scheme may be applied by physical vapor deposition (PVD).

(Grab, col. 4, ll. 56-61.)

Patent Owner contends:

> The fact that the inventors in Grab merely contemplated that PVD
> might work as a potential alternative to the CVD and/or MTCVD
> coating techniques that were actually demonstrated does not prove
> *prior invention* of a cutting tool comprising a ruthenium-containing
> substrate and a PVD coating or a method comprising applying a PVD
> coating to a ruthenium-containing substrate. *Net MoneyIN*, 545 F.3d
> at 1369 ("the hallmark of anticipation is prior invention").

(Req. Reh'g 6.) Patent Owner argues that PVD coatings were "a mere

*contemplation*," were "merely being potential, yet untried," and therefore were not

"an actually invented embodiment that proves prior invention." (*Id.* at 8.)

It is true that Grab does not appear to have utilized PVD coatings in its

working examples. Rather, Grab stated that PVD coatings were "contemplate[d],"

i.e., "To have in mind as an intention or possibility."[2] However, we do not find

any requirement in 35 U.S.C. § 102 that an embodiment be actually made for a

---

[2] http://www.thefreedictionary.com/contemplate (accessed October 21, 2013).

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

disclosure to be anticipatory. Indeed, the Federal Circuit has repeatedly emphasized that "anticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those suggestions be enabled to one of skill in the art. " *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001) (as quoted in *Novo Nordisk Pharmaceuticals Inc. v. Bio-Technology General Corp.*, 424 F. 3d 1347,1355 (Fed. Cir. 2005). Consequently, we do not find it persuasive that we erred in relying on the disclosure of PVD coatings in Grab in our conclusion that Grab anticipated the claimed invention of the '519 patent.

2. Does Grad enable the claimed invention?

"In order to anticipate, a prior art disclosure must also be enabling, such that one of ordinary skill in the art could practice the invention without undue experimentation." *Novo Nordisk*, 424 F.3d at 1355; see also *Impax Laboratories Inc. v. Aventis Pharmaceuticals Inc.*, 545 F. 3d 1312, 1314 (Fed. Cir. 2008). Citing to a declaration by Craig Morton, Ph.D., Patent Owner states:

> Grab patent does not recognize or appreciate, let alone address, the cobalt capping problems that would prevent the successful application of PVD coatings to ruthenium-featured substrates. Therefore, the Grab patent does not provide enough information to enable one to successfully apply PVD coatings on ruthenium-featured substrates.

(Req. Reh'g 11, quoting from First Morton Declaration at ¶15). Patent Owner cited evidence of "the exacerbated/enhanced binder capping problem due to ruthenium addition, which frustrated the effective application of PVD coatings to sintered cemented carbide substrates comprising ruthenium-containing substrates prior to the present invention." (Req. Reh'g 12.)

5

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

Patent Owner asserts to have "discovered how to successfully combine PVD coatings with cemented carbide cutting tool substrates having a ruthenium-containing binder phase." (Req. Reh'g 11.) For example in the Third Morton Declaration, Dr. Morton stated that "without using special processing conditions, blasting the surfaces of sintered cemented carbide materials having cobalt-ruthenium binder capping will not remove or reduce the capping and provide a surface suitable for effective PVD coating or will leave the underlying surface otherwise unsuitable for PVD coating." (Third Morton Decl. ¶ 8.)

Although Grab does not expressly describe a capping problem due to ruthenium addition, Grab does describe grinding substrates prior to coating (Grab, col. 7, ll. 32-34). Indeed, pretreating surfaces prior to PVD coating was known in the art prior to the filing date of the '519 patent. Biernat,[3] which was cited by Requester in this proceeding, expressly states:

> However, even the quality of a PVD coating can't be ensured unless the surface to be coated lends proper support. Just as one would not paint over oxidized, dirty, or corroded surfaces, one should not coat over tool surfaces that are contaminated or unstable.
>
> Sometimes, a layer up to 15µm thick of excess cobalt will cover a sintered tool's surface. This mottled, cobalt-rich skin is known as cobalt capping. . . . But when a capped surface is coated, the soft capping may deform and yield, causing the coating to stretch or crack or otherwise breakdown prematurely. To avoid these problems the excess cobalt must be removed by grinding or polishing before the tool is coated.

(Biernat, p. 1 in section titled "Surface Quality."). Consistently, Grab describes grinding the surface of the substrate prior to applying a coating to the substrate, albeit not a PVD coating. In view of Grab's explicit disclosure, as well as

---

[3] Stanley Biernat, Jr., *Coatings Can Greatly Enhance Carbide Tool Life, but only if they Stay in Place*, Cutting Tool Engineering, v. 47, n. 2 (1995).

6

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

Biernat's, which would be imputed to one of ordinary skill in the art, we conclude
that one of ordinary skill in the art would have routinely ground the surface of the
substrate prior to applying any coating, including a PVD coating. Specifically, it
appears that Grab teaches the same type of surface treatment said by Patent Owner
to mitigate cobalt capping and enable its claimed invention. Consequently, we do
not find it persuasive that Grab does not enable the subject matter of claim 1.

<u>REHEARING DENIED</u>

7

Appeal 2013-001102
Reexamination Control 95/001,417
Patent 7,244,519

CC:

Patent Owner:

Allegheny Technologies
1000 Six PPG Place
Pittsburgh, PA 15222

Mark R. Leslie
K&L Gates LLP
K&L Gates Center
201 Sixth Avenue
Pittsburgh, PA 15222-2613

Third Party Requester:

Womble Carlyle Sandridge & Rice, PLLC
ATTN: Patent Docketing
P.O. Box 7037
Atlanta, GA 30357-0037

8



US007244519B2

(12) **United States Patent**
Festeau et al.

(10) Patent No.: **US 7,244,519 B2**
(45) Date of Patent: **Jul. 17, 2007**

(54) **PVD COATED RUTHENIUM FEATURED CUTTING TOOLS**

(75) Inventors: **Gilles Festeau**, Ferney Voltaire (FR);
**X. Daniel Fang**, Franklin, TN (US);
**David J. Wills**, Brentwood, TN (US)

(73) Assignee: **TDy Industries, Inc.**, Pittsburgh, PA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 203 days.

(21) Appl. No.: **10/922,750**

(22) Filed: **Aug. 20, 2004**

(65) **Prior Publication Data**
US 2006/0051618 A1    Mar. 9, 2006

(51) **Int. Cl.**
***B32B 9/06***    (2006.01)

(52) **U.S. Cl.** ......................... **428/698**; 51/207; 51/309; 75/241; 428/469; 428/472; 428/699; 204/197.11

(58) **Field of Classification Search** ................ 51/307, 51/309; 75/241; 428/469, 472, 698, 699; 204/192.11
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,574,011 A * 3/1986 Bonjour et al. ............... 75/241

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| GB | 622041 | * | 4/1949 |

| | | | |
|---|---|---|---|
| GB | 1082568 | * | 9/1967 |
| GB | 1309634 | * | 3/1973 |
| JP | 2003-306739 | * | 10/2003 |
| JP | 2004-181604 | * | 7/2004 |
| WO | 99/13121 | * | 3/1999 |
| WO | 00/52217 | * | 9/2000 |

OTHER PUBLICATIONS

Tracey et al "Development of Tungsten Carbide-Cobalt-Ruthenium Cutting Tools for Machining Steels" Proceedings Annual Microprogrammin Workshop vol. 14, 1981, p. 281-292.*

* cited by examiner

*Primary Examiner*—Archene Turner
(74) *Attorney, Agent, or Firm*—Kirkpatrick + Lockhart Presto Gates Ellis LLP; Mark R. Leslie; Patrick J. Viccaro

(57) **ABSTRACT**

The present invention relates to the PVD coated tungsten carbide (WC) based cemented cutting inserts with ruthenium (Ru) as a key chemical element, or a key feature, in the cobalt (Co)-based binder phase, particularly useful for machining today's mold & die materials. In the Ru—Co mixed binder phase in the tungsten carbide substrate, the ratio of Ru/Co is at least 3%, by weight. The Ru-featured carbide cutting insert provided in this invention is PVD coated with one or more layers by a modern PVD coating technology. The development of the PVD coated Ru-featured carbide cutting inserts provided in this invention is based on a discovery that the unique combination of PVD coating techniques and Ru-featured carbide cutting inserts demonstrates superior machining performance in today's mold & die machining applications.

**17 Claims, 2 Drawing Sheets**







Figure 1A



Figure 1B

Figure 1C



Figure 2

US 7,244,519 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# PVD COATED RUTHENIUM FEATURED CUTTING TOOLS

## TECHNICAL FIELD

The present invention relates to cemented carbide based cutting tools and inserts coated by a physical vapor deposition process. More specifically, the present invention relates to such cutting tools and inserts comprising ruthenium (Ru) as a component in the binder of the cemented carbide and methods of producing such cutting tools.

## BACKGROUND

Cemented carbide cutting tools and inserts (generally "cutting tools") are commonly employed in machining operations such as, for example, cutting, drilling, reaming, countersinking, counterboring, end milling, turning, grooving, threading, and tapping. The manufacturing process for cemented carbide cutting tools involves consolidating metallurgical powder (comprised of hard particles and a binder) to form a compact. The compact is then sintered to form a cylindrical tool blank having a solid monolithic construction. Subsequent to sintering, the tool blank may be appropriately machined to form a cutting edge or other features of the particular geometry desired on the cutting tool.

Cemented carbide tools are industrially important because of the combination of tensile strength, wear resistance, and toughness that is characteristic of these materials. The hard particles may be, for example, carbides, nitrides, borides, silicides, or oxides of elements within groups IVB through VIB of the periodic table. A common example is tungsten carbide. The binder may be a metal or metal alloy, typically cobalt, nickel, iron or alloys of these metals. The binder "cements" the hard particles within a continuous matrix interconnected in three dimensions.

The physical and chemical properties of cemented carbide materials depend in part on the individual components of the metallurgical powders used to produce the material. The properties of the cemented carbide materials are determined by, for example, the chemical composition of the hard particle, the average particle size and particle size distribution of the hard particles, the chemical composition of the binder, and the ratio of binder to hard particle in the substrate. By varying the components of the metallurgical powder, cutting tools, including cutting inserts, may be produced with unique properties matched to specific applications. Many cemented carbide cutting tools are prepared with in cobalt as the primary component of the binder, such cemented carbides may be particularly useful for machining today's mold and die materials. The weight percentage of cobalt as a binder in such cemented carbide cutting tools, typically, ranges from 5 to 20%.

Presently, a very limited amount of cemented carbide cutting tools have been prepared with ruthenium added to a cobalt binder. According to the reference book Modern Metal Cutting by Sandvik (ISBN-9197229930, 1996), typical substrates of cutting inserts are tungsten-based carbide (WC), cubic boron nitride (CBN), ceramic (Al2O3/Si3N4), titanium-based carbide or cermet (TiC/TiN), coronite (combined high speed steel and carbide) and polycrystalline diamond (PCD). According to the reference book World Directory and Handbook of Hardmetals and Hard Materials, 5th Edition (ISBN-0950899526), 1992, by K. J. Brookes, which collects carbide data from all major carbide cutting tool manufacturers worldwide, almost all tungsten carbides use cobalt as a binder with addition of a balance of some other alloying compounds, such as TiC, TaC/NbC, to refine the properties of the substrate for particular applications.

Ruthenium (Ru) is a member of the platinum group and is a hard, lustrous, white metal that has a melting point of approximately 2,500° C. Ru does not tarnish at room temperatures, and may be used as an effective hardener, creating alloys that are extremely wear resistant. Stellram, an Allegheny Technologies Company located at 1 Teledyne Place, LaVergne, Tenn., USA 37086, has found that adding an amount of Ru into the cobalt binder continuous phase of a tungsten carbide substrate results in a cemented carbide cutting insert with improved resistance to thermal cracking and significant reduction of the propagation of cracks along and beyond the cutting insert edges and propagation of cracks into the substrate during use in machining processes. Such substrates may be called Ru-featured cemented carbides. The amount of Ru may be varied depending on the application, however, typical commercially available products include a concentration of ruthenium in the binder phase of cemented carbide substrates in the ranges of approximately 5% to 25%, by weight.

The cemented carbide substrates may additionally include a single or multiple layer coating to enhance cutting performance of tungsten carbide cutting inserts. Methods for coating cemented carbide cutting tools include chemical vapor deposition (CVD), physical vapor deposition (PVD) and diamond coating. Most often, CVD is used to apply the coating to cutting inserts due to the well-known advantages of CVD coatings in cutting tools. It is well known that PVD coatings are thinner than CVD coatings, thus provide the advantage of retaining sharp cutting edges.

As an example of PVD coating technologies, U.S. Pat. No. 6,352,627 B2 discloses a PVD coating method and device, which is based on magnetron sputtering techniques to produce refractory thin films or coats on cutting inserts, can deliver three consecutive voltage supplies during the coating operation, promoting an optimally enhanced ionization process that results in good coating adhesion on the substrate, even if the substrate surface provided is rough, for example because of grinding or jet abrasion treatment. Examples of some other PVD coating technologies are ion plating, arc discharge evaporation, ion beam assisted deposition and activated reactive evaporation.

Diamond compacts, or composite diamond compacts, may contain Ru as a significant element in the substrate material (no more than 20% by volume), such as in U.S. Pat. No. 6,620,375 B1, European Patent 1,077,783. Diamond compacts may also be called polycrystalline diamond (PCD) and may be manufactured under elevated temperature and pressure conditions. Diamond compacts are brittle in nature and thus they have to be bonded to a substrate that contains a binder, such as cobalt, iron or nickel, that may further include Ru. A diamond compact contains a polycrystalline mass of diamond particles presented in an amount of at least 80% by volume of the substrate. Diamond compacts are typically used in abrading or abrasive tools for sawing, milling or profile cutting of wood products.

Ru-featured cemented carbide cutting inserts are limited to either uncoated or CVD coated, that is to say, no PVD coatings have not been applied to Ru-featured carbide cutting inserts. For example, X500™, a commercial designation of Stellram's cutting tool products, is a multiple layer TiN—TiC—TiN CVD coated carbide cutting insert having Ru-featured substrate for the applications in machining of titanium alloys, nickel based alloys and ductile iron; and X44™ and X22™ (both commercial designations of Stellram's cutting tool products) are uncoated Ru-featured

US 7,244,519 B2

**3**

cemented carbide cutting inserts for applications in machining of steels and alloyed steels.

Different from conventional cobalt-based binder phase, in a Ru-featured cemented carbide substrate, cobalt (Co) and ruthenium (Ru) act as a mixed solvent during the sintering process. It is known that a cemented carbide cutting inserts with cobalt as a binder have a tendency for cobalt to penetrate through the surface of the compact and melt during the sintering process forming cobalt structures on the surface. This process is often referred to as cobalt capping. Cobalt caps on the substrate surface are randomly distributed, thus creating a crested and rough texture on the surface of the coating tool. The presence of Ru in the cobalt binder exaggerates the cobalt capping on cemented carbides, increasing the height and frequency of the cobalt caps. Even though some surface treatment techniques may be performed to reduce the cobalt capping effect to some degree, it is difficult to consistently produce a uniform surface on a sintered cemented carbide cutting inserts containing Ru in the binder. However, commercially available coated tools have compensated for the enhanced cobalt capping effects on the surface of the carbide cutting inserts including Ru-featured binders by applying a thick CVD coating with or without some pre-surface treatment methods like electropolishing, micro-blasting, wet blasting, compressed air blasting, etc. Thick CVD coating layers may cover up and reduce the overall impact of the cobalt capping. Additionally, the elevated CVD coating temperature (usually above 1500° C.) slightly melts the surface region of the cemented carbide and promotes better adhesion of the CVD coating layer to the surface. Thus, as of today, the Ru-featured carbide cutting inserts are limited only to uncoated and CVD coated inserts.

A PVD coating process involves a much lower coating temperature and, therefore, does not remelt the surface binder and tends to produce coatings that are not as well adhered to the carbide substrate surface. Additionally, thin PVD coatings cannot compensate for the enhanced cobalt capping effect. This is believed to be the reason that Ru-featured carbide cutting inserts are limited to uncoated or CVD coated cutting tools. The apparent difficulties of applying the low operation temperature based thin PVD coatings to guarantee consistent surface quality of coated carbide cutting inserts has not been considered feasible.

SUMMARY

The present invention relates to coated cutting tools comprising a substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium. The cutting tools may have at least one coating on at least a portion of the substrate, wherein the coating has the characteristics of a coating applied by physical vapor deposition. The binder may comprise at least one of iron, nickel, cobalt and alloys of such elements. The ruthenium concentration in the binder may be any concentration capable of providing the substrate with the desired properties. In certain embodiments, the concentration of ruthenium in the binder may be from 3% to 30%, by weight.

The cutting tool of the present invention comprises at least one coating having the characteristics of a coating applied by PVD of a metal carbide, a metal nitride, a metal boride and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table, such as but not limited to, at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), alumi-

**4**

num titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide ($Al_2O_3$), titanium diboride ($TiB_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN).

The present invention also relates to methods of coating a substrate, comprising applying a coating on a substrate by physical vapor deposition, wherein the substrate comprises hard particles and a binder and the binder comprises ruthenium. The method may also include treating the substrate prior to coating the substrate, such as by electropolishing, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting. Additional coatings on the substrate may be applied by either by physical vapor deposition or chemical vapor deposition.

The reader will appreciate the foregoing details, as well as others, upon considering the following detailed description of certain non-limiting embodiments. The reader also may comprehend additional details of the present disclosure upon making and/or using the PVD coated cutting tools of the present disclosure.

BRIEF DESCRIPTION OF THE FIGURES

FIGS. 1A, 1B and 1C show an embodiment of a typical cutting insert, wherein FIG. 1A is a perspective view of the cutting insert, FIG. 1B is a top view of the cutting insert, and FIG. 1C is a side view of the cutting insert; and

FIG. 2 is a graph of the test results of comparative testing performed on embodiments of cutting inserts of the present invention and cutting inserts of the prior art.

DESCRIPTION OF EMBODIMENTS OF THE INVENTION

The present invention in directed to a cutting tool comprising a substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium. The substrate additionally comprises at least one coating on at least a portion of the substrate, wherein the coating has the characteristics of a coating applied by physical vapor deposition.

Embodiments include cutting tools in which the substrate may be any combination of hard particles and a binder, such as a cemented carbide. The binders of cemented carbides are typically at least one of iron, nickel, cobalt, and alloys of these metals. In embodiments of the present invention the binder additionally includes ruthenium. Ruthenium may be present in any quantity effective to have a beneficial effect on the properties of the cutting tool, such as a concentration of ruthenium in the binder from 3% and 30%, by weight. In certain embodiments, the concentration of ruthenium in the binder may be from 8% and 30%, by weight, from 8% and 20%, or even from 10% and 15%, by weight.

The binder also may contain, for example, elements such as W, Cr, Ti, Ta, V, Mo, Nb, Zr, Hf, and C up to the solubility limits of these elements in the binder. Additionally, the binder may contain up to 5 weight percent of elements such as Cu, Mn, Ag and Al. One skilled in the art will recognize that any or all of the constituents of the cemented carbide material may be introduced in elemental form, as compounds, and/or as master alloys.

US 7,244,519 B2

5

The hard particles of substrates of the present invention may be at least one of metal carbides, nitrides, borides, suicides, oxides, and solid solutions thereof. More specifically, the hard particles may comprise at least one transition metal carbide, nitride, boride, silicide and oxide selected from such compounds titanium, chromium, vanadium, zirconium, hafnium, tantalum, molybdenum, niobium, and tungsten or solid solutions thereof. As used herein, a cemented carbide includes substrates containing such hard particles in a binder. In a preferred cutting tool embodiment, the substrate comprises tungsten carbide in a binder of cobalt and ruthenium.

The coating applied by physical vapor deposition may be any coating capable of being applied by any physical deposition method. Typical, PVD processes include, but are not limited to, evaporation processes, activated reactive evaporation, arc discharge evaporation, laser ablation, ion plating, and sputtering, ion plating, and ion beam assisted deposition. The PVD coatings generated on Ru-featured cemented carbide cutting inserts can be characterized as thin, hard, homogeneously smooth, chemically stable and having a highly dense structure. PVD coatings may be further characterized by some unique differences in the microstructure and residual stresses of coatings deposited by PVD and CVD. PVD coating will have high residual compression stress and fine grains usually improve the hardness and toughness of PVD coatings. Embodiments of the coating applied by PVD may be at least one coating comprising at least one of a metal carbide, a metal nitride, a metal boride, and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table. For example, coating on the cutting tools of the present invention may be at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (Al-TiN+WC/C), aluminum oxide ($Al_2O_3$), titanium diboride ($TiB_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN). In certain embodiments, the coating may be from 1 to 10 micrometers thick. Though it may be preferable in specific applications for the PVD applied coating to be from 2 to 6 micrometers thick.

The present invention also includes a method of coating a substrate. Embodiments of the method of the present invention include applying a coating on a cemented carbide substrate by PVD, wherein the cemented carbide substrate comprises hard particles and a binder and the binder comprises ruthenium. The PVD coated Ru-featured carbide cutting inserts provided in this invention may use any PVD coating technology. Such PVD coating applied to the substance comprising a binder including ruthenium produce coatings with enhanced hardness, reduced friction, chemical stability, wear resistance, thermal crack resistance and prolonged tool life. In embodiments, the coating may be applied to a thickness of from 1 to 10 micrometers (microns) or in certain embodiments a thickness of 2 to 6 micrometers may be desirable.

The method may include treating the substrate prior to coating the substrate. The treating prior to coating comprises at least one of electropolishing, shot peening, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting. Pre-coating surface treatments on any

6

coated (CVD or PVD) carbide cutting inserts may reduce the cobalt capping effect of substrates. Examples of pre-coating surface treatments include wet blasting (U.S. Pat. Nos. 5,635,247 and 5,863,640), grinding (U.S. Pat. No. 6,217,992 B1), eletropolishing (U.S. Pat. No. 5,665,431), brushing (U.S. Pat. No. 5,863,640), etc. Improper pre-coating surface treatment may lead to poor adhesion of PVD coats on the Ru-featured carbide substrate, thus resulting in premature failure of PVD coatings. This is primarily due to the fact that the PVD coating layers are thin and the surface irregularities due to cobalt capping are more pronounced in a Ru-featured carbide substrate.

In certain embodiments, the method may comprise applying a second coating comprising of at least one of a metal carbide, a metal nitride, a metal boride and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table. Embodiments may comprise applying at least one coating selected from titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide ($Al_2O_3$), titanium diboride ($TiB_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN). The method may include applying the second and any additional coatings on the substrate by physical vapor deposition or chemical vapor deposition.

Surprisingly, a thin PVD coated Ru-featured carbide cutting tool demonstrated superior machining performance and exhibits satisfactory and consistent quality when compared to uncoated and CVD coated Ru-featured cutting tools. A PVD coating method typically may comprise all or some of the following units and steps:

a cleaning station for cleaning and drying process steps;

a pre-coating surface treating of the substrates, such as, but not limited to electropolishing, shot peening, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting, dust extraction and vacuum cleaning;

a quality management computer system for effective in-process quality control and documentation;

a batching station for handling the sequence and method for automatic loading parts; and

an optional post-coating surface treating, such as, but not limited to, blasting, shot peening, compressed air blasting, and brushing, to further improve the surface finish of the coated parts.

Certain embodiments of the cutting tools of the present invention may incorporate a step of treating the coating on the substrate to further improve the surface quality on the coated cutting inserts. Treating of the PVD coating of the cutting inserts of the present invention can further improve the surface quality of the coated layer. There are a number of methods for post treatment of a coated cutting insert surface, for example, shot peening, Japanese Patent 02254144, that describes a process using injection of small metal particles having a spherical grain shape with grain size in a range of 10-2000 mm. Another example of post-coating surface treatment is compressed-air blasting, European Patent 1,198,609 B1, that describes a process using an inorganic blasting agent, like $Al_2O_3$, with a very fine grain size ranging from 1 to 100 mm. Another example of post coating treatment is brushing, U.S. Pat. No. 6,638,609 B2,

US 7,244,519 B2

7

that describes a process using a nylon straw brush containing SiC grains. A gentle wet blasting may also be used as a post-coating surface treatment to create a smooth coating layer such as described in, U.S. Pat. No. 6,638,609 B2. In general, a fine surface treatment technique on PVD coated inserts can create smoothed and homogenized surface structure of PVD coatings on carbide cutting inserts.

The following examples of PVD coated cemented carbide tools and comparative machining test examples were conducted at different cutting conditions in order to evaluate advantages of cutting tools and methods according to the present disclosure.

EXAMPLES

Example 1

Uncoated Sample Tungsten Carbide Insert with 13 wt % Ruthenium in the Binder (X22 Substrate)

According to ISO standard on the substrate grade of cutting tool materials, X22 is close to a tough grade K30. Shown in Table 1 were the chemical compositions of the X22 metal powers. The major compositions in such powder materials include WC, Co and Ru. Some mechanical properties for the sintered tungsten carbides are also listed in Table 1.

TABLE 1

| Chemical Composition of the Substrate (wt. %) | | | Average Grain Size | Transverse Rupture Strength | Density | Hardness |
|---|---|---|---|---|---|---|
| WC | Co | Ru | (µm) | (N/µm²) | (g/cm³) | (HRA) |
| 90.8 | 8.0 | 1.20 | <1 | 3500 | 14.55 | 92.0 |

The metal powders in the weight percentages shown in Table 1 were mixed and then wet blended by a ball mill over a 72-hour period. After drying, the blended compositions were compressed into green sized bodies of the designed cutting insert under a pressure of 1-2 tons/cm². Then the compacted green bodies of the tungsten carbide cutting inserts were sintered, or heat-treated, in a furnace to close the pores in the green bodies and build up the bond between the hard particles to increase the strength and hardness. In particular, to effectively reduce the micro-porosity of the sintered substrate and ensure the consistent sintering quality of the X22™ Ru-featured carbide cutting inserts, the sinter-HIP, i.e. high-pressure sintering process, was used to introduce a pressure phase following the dewaxing, presintering and low-pressure nitrogen (N₂) sintering cycle. The sintering procedure X22™ Ru-featured carbide cutting inserts was performed using the following parameters during the major processing steps:

8

the dewaxing cycle started at room temperature with a ramping speed of 2° C./min until reaching a temperature of 400° C. and then held at this temperature for approximately 90 minutes;

the presintering cycle, which breaks down the oxides of Co, WC, Ti, Ta, Nb, etc., started with a ramping speed of 4° C./min until reaching a temperature of 1,200° C. and then held this temperature for an additional 60 minutes;

the low pressure nitrogen (N₂) gas was introduced at 1,350° C. during the temperature ramping from 1,200° C. to 1,400° C./1,450° C., i.e. sintering temperature, and then held at this sintering temperature 1,400° C./1,450° C. at a pressure of about 2 torrs for approximate 30 minutes;

the sinter-HIP process was then initiated while at the sintering temperature, i.e. 1,400° C./1450° C., during the process that argon (Ar) pressure was introduced and rose to 760 psi in 30 minutes, and then the pressure of the sinter-HIP process was held at this pressure for additional 30 minutes; and finally

the cooling cycle was carried out to let the heated green bodies of the X22™ carbide cutting inserts cool down to room temperature while inside the furnace.

The X22™ Ru-featured carbide cutting inserts produced by this process shrunk into the desired sintered size and became non-porous.

Example 2

PVD Coated Sample Tungsten Carbide Insert with 13 wt % Ruthenium in the Binder (X44 Substrate)

Metal powder materials in the weight percentages shown in Table 2 were prepared. The major compositions in such powder materials include WC, TiC, TaC, NbC, Co and Ru. Some mechanical properties for the sintered tungsten carbides are also listed in Table 2.

TABLE 2

| Chemical Compositions (weight %) | | | | | | Average Grain Size | Transverse Rupture Strength | Density | Hardness |
|---|---|---|---|---|---|---|---|---|---|
| WC | TiC | TaC | NbC | Co | Ru | (µm) | (N/µm²) | (g/cm³) | (HRA) |
| 67.2 | 10 | 7 | 2 | 12 | 1.80 | 1-2 | 2300 | 11.70 | 91.4 |

The metal powders with compositions as defined in Table 2 were mixed and then wet blended in a ball mill over a 72-hour period. After drying, the blended compositions were compressed into green sized bodies of the designed cutting insert under a pressure of 1-2 tons/cm². Then the compacted green bodies of the tungsten carbide cutting inserts were sintered, or heat-treated, in a furnace to close the pores in the green bodies and build up the bond between the hard particles to increase the strength and hardness. In particular, to effectively reduce the micro-porosity of the sintered substrate and ensure the consistent sintering quality of X44™ Ru-featured carbide cutting inserts, the sinter-HIP, i.e. high-pressure sintering process, was used to introduce a pressure phase following the dewaxing, presintering and vacuum sintering cycle. The sintering procedure for X44™ Ru-featured carbide cutting inserts was performed using the following parameters during the major processing steps:

US 7,244,519 B2

9

the dewaxing cycle started at room temperature with a ramping speed of 2° C./min until reaching a temperature of 400° C. and then this temperature was held for an additional 90 minutes;

the presintering cycle, which breaks down the oxides of Co, WC, Ti, Ta, Nb, etc., started with a ramping speed of 4° C./min until the temperature reached 1,200° C. and then this temperature was held for approximately 60 minutes;

the vacuum cycle was then begun at a temperature of 1,350° C. during the temperature ramping process of the presintering cycle from 1,200° C. to 1,400° C./1, 450° C., and then held at this sintering temperature for about 30 minutes;

the sinter-HIP process was then initiated while at the sintering temperature, i.e. approximately 1,400° C./1, 450° C., during the process argon (Ar) gas was introduced and raising the pressure to 760 psi in 30 minutes, and then the sinter-HIP process held at this pressure for additional 30 minutes; and

the cooling cycle was conducted to let the heated green bodies of the X44™ carbide cutting inserts cool down to room temperature while inside the furnace.

Thus obtained X44™ Ru-featured carbide cutting inserts shrunk into the desired sintered size and became non-porous. Followed by the sintering process, the sintered tungsten carbide cutting inserts may be ground and edge-honed to become finished uncoated final products. Followed by the sintering process, the sintered tungsten carbide cutting inserts may be ground and edge-honed to be ready for pre-coating surface treatment and PVD coating operation.

The PVD coating process for this X44™ substrate is a single layer with coating material composition of aluminum-titanium-nitride or AlTiN. Prior to PVD coating, the surface of X44 carbide cutting inserts was blasted to provide better prepared surface. The PVD coating is around 4 microns in thickness on the surface of Ru-featured X44 carbide cutting inserts.

Example 3

Comparative Testing Results of High-Feed Milling Inserts:

A series of milling cutting inserts with the same insert shape and top geometry, described according to the ASTM Standard as XDLW120508SR-D, was selected as testing inserts to compare machining performance of different types of cutting inserts including the one with Ru-featured substrate provided in this invention. Based on ISO standard, the insert XDLW120508SR-D can be described as a special shape, as shown in FIGS. 1A, 1B and 1C, with 12 mm in diameter, 5.56 mm in thickness and single sided with a clearance angle of 15 degrees. Embodiments of the cutting inserts 10 have cutting edges 11, a top surface 12, side walls 13 and nose corners 14. Such cutting inserts are usually used for heavy milling operations with high feed rates. The detailed description of the testing inserts is given below in Table 3.

TABLE 3

| Milling Inserts used in the Comparative Test | | | |
|---|---|---|---|
| Carbide Cutting Inserts | Ruthenium Composition (weight per cent) | Hardness (HCA) | Wt % of Ru in the binder phase |
| X44 with AlCrN PVD | 1.8 | 91.4 | 13% |

10

TABLE 3-continued

| Milling Inserts used in the Comparative Test | | | |
|---|---|---|---|
| Carbide Cutting Inserts | Ruthenium Composition (weight per cent) | Hardness (HCA) | Wt % of Ru in the binder phase |
| Coating | | | |
| X44 with AlTiN PVD | 1.8 | 91.4 | 13% |
| T14A with AlCrN PVD | 0 | 91.3 | 0 |
| T14A with AlTiN PVD | 0 | 91.3 | 0 |
| X500 with TiN-TiC-TiN CVD Coating | 1.4 | 89.5 | 14.7% |

In Table 3, T14A is also a commercial designation of Stellram's cutting tool products. T14A is a carbide substrate without ruthenium included in the binder. The hardness of T14A substrate is very close to that of X44 substrate. The cutting conditions used in the test are shown as follows.

| Cutting speed: | Vc = 147 m/min |
|---|---|
| Feed rate: | Fz = 1 mm/Z |
| Depth of cut: | DCC = 2 mm |
| Work Material: | 4340 steel with a hardness of 375 HB |

The comparative test results are shown in FIG. 2. During the test, tool wear for each cutting insert was measured at a prescribed time interval until the wear reached a certain level indicating the tool failure. All the values in FIG. 2 were based on the average from the repeated machining tests.

It is clear from the results of this comparative test that the PVD coated Ru-featured carbide cutting inserts show the best cutting performance in terms of tool life, for example, a the PVD coated Ru-featured cutting insert 55% longer tool life than x44-AlCrN PVD coating with T14A-AlCrN PVD, and a 245% longer tool life than x44-AlTiN PVD coating with T14A-AlTiN PVD. The PVD coated Ru-featured cutting inserts provided in this invention outperform those having the same Ru-featured substrate but with CVD coatings as well as those with PVD coatings but without Ru-featured substrate.

It will be appreciated by those of ordinary skill in the art that the present invention provides certain test parameters, conditions, and characteristics relative to specific compositions and method to the characteristics of Ru-featured cutting tools. These parameters, conditions, and characteristics provide an approach to improve properties, such as the tool life, of certain cutting insert. It will also be appreciated by those skilled in the art that changes could be made to the embodiments described herein without departing from the broad concept of the invention. It is understood, therefore, that this invention is not limited to the particular embodiments disclosed, but is intended to cover modifications that are within the spirit and scope of the invention, as defined by the appended claims.

The invention claimed is:

1. A cutting tool, comprising:

a cemented carbide substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium; and

at least one coating on at least a portion of the substrate, wherein the coating has the characteristics of a coating applied by physical vapor deposition.

2. The cutting tool of claim 1, wherein the wear resistant coating has a thickness of from 1 to 10 microns.

A 13

US 7,244,519 B2

11

**3**. The cutting tool of claim **1**, wherein the binder comprises at least one of iron, nickel and cobalt.

**4**. The cutting tool of claim **3**, wherein the binder comprises cobalt.

**5**. The cutting tool of claim **4**, wherein the concentration of ruthenium in the binder is from 3% and 30%, by weight.

**6**. The cutting tool of claim **5**, wherein the concentration of ruthenium in the binder is from 8% and 30%, by weight.

**7**. The cutting tool of claim **6**, wherein the concentration of ruthenium in the binder is from 8% and 20%, by weight.

**8**. The cutting tool of claim **7**, wherein the concentration of ruthenium in the binder is from 10% and 15%, by weight.

**9**. The cutting tool of claim **1**, wherein the at least one coating comprises at least one of a metal carbide, a metal nitride, a metal silicon and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table.

**10**. The method of claim **9**, wherein the coating comprises at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (Al-TiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (Al-

12

TiN+WC/C), aluminum oxide (Al2O3), titanium diboride (TiB2), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN).

**11**. The cutting tool of claim **10**, wherein the at least one coating has a thickness from 2 to 6 micrometers.

**12**. The cutting tool of claim **10**, wherein the at least one coating comprises multiple layers.

**13**. The cutting tool of claim **1**, wherein the hard particles are at least one of metal carbides, nitrides, borides, silicides, oxides and solid solutions thereof.

**14**. The cutting tool of claim **13**, wherein the metal of the metal carbides, nitrides, borides, silicides, oxides, and solid solutions thereof is at least one of titanium, chromium, vanadium, zirconium, hafnium, tantabium, molybdenum, niobium and tungsten.

**15**. A method of coating a substrate, comprising: applying a coating on a cemented carbide substrate by physical vapor deposition, wherein the substrate comprises a hard particles and a binder and the binder comprises ruthenium.

**16**. The method of claim **15**, wherein the wear resistant coating has a thickness from 2 to 6 microns.

**17**. The method of claim **15**, wherein the binder is at least one of iron, nickel and cobalt.

\* \* \* \* \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.      : 7,244,519 B2                                Page 1 of 8
APPLICATION NO. : 10/922750
DATED            : July 17, 2007
INVENTOR(S)      : Festeau et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Please delete the Title page and Column 1 line 1 thru Column 12 line 23 and insert the Title page and Column 1 line 1 thru Column 12 line 36 as attached.

Signed and Sealed this

Twenty-seventh Day of July, 2010

David J. Kappos
*Director of the United States Patent and Trademark Office*

**CERTIFICATE OF CORRECTION (continued)**                    Page 2 of 8

(12) **United States Patent**                        (10) **Patent No.:**    **US 7,244,519 B2**
    Festeau et al.                        (45) **Date of Patent:**    **Jul. 17, 2007**

(54) **PVD COATED RUTHENIUM FEATURED CUTTING TOOLS**

(75) Inventors: **Gilles Festeau**, Ferney Voltaire (FR); **X. Daniel Fang**, Franklin, TN (US); **David J. Wills**, Brentwood, TN (US)

(73) Assignee: **TDy Industries, Inc.**, Pittsburgh, PA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 203 days.

(21) Appl. No.: **10/922,750**

(22) Filed: **Aug. 20, 2004**

(65) **Prior Publication Data**
    US 2006/0051618 A1      Mar. 9, 2006

(51) **Int. Cl.**
    *B32B 9/06*        (2006.01)

(52) **U.S. Cl.** ......................... 428/698; 51/207; 51/309; 75/241; 428/469; 428/472; 428/699; 204/197.11

(58) **Field of Classification Search** .................. 51/307, 51/309; 75/241; 428/469, 472, 698, 699; 204/192.11
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,574,011 A *  3/1986  Bonjour et al. ............... 75/241

FOREIGN PATENT DOCUMENTS

GB          622041    *  4/1949

| GB | 1082568 | * | 9/1967 |
| GB | 1309634 | * | 3/1973 |
| JP | 2003-306739 | * | 10/2003 |
| JP | 2004-181604 | * | 7/2004 |
| WO | 99/13121 | * | 3/1999 |
| WO | 00/52217 | * | 9/2000 |

OTHER PUBLICATIONS

Tracey et al "Development of Tungsten Carbide-Cobalt-Ruthenium Cutting Tools for Machining Steels" Proceedings Annual Microprogrammin Workshop vol. 14, 1981, p. 281-292.*

* cited by examiner

*Primary Examiner*—Archene Turner
(74) *Attorney, Agent, or Firm*—Kirkpatrick + Lockhart Preston Gates Ellis LLP; Mark R. Leslie; Patrick J. Viccaro

(57)        **ABSTRACT**

The present invention relates to the PVD coated tungsten carbide (WC) based cemented cutting inserts with ruthenium (Ru) as a key chemical element, or a key feature, in the cobalt (Co)-based binder phase, particularly useful for machining today's mold & die materials. In the Ru—Co mixed binder phase in the tungsten carbide substrate, the ratio of Ru/Co is at least 3%, by weight. The Ru-featured carbide cutting insert provided in this invention is PVD coated with one or more layers by a modern PVD coating technology. The development of the PVD coated Ru-featured carbide cutting inserts provided in this invention is based on a discovery that the unique combination of PVD coating techniques and Ru-featured carbide cutting inserts demonstrates superior machining performance in today's mold & die machining applications.

**31 Claims, 2 Drawing Sheets**





US 7,244,519 B2

1

# PVD COATED RUTHENIUM FEATURED CUTTING TOOLS

## TECHNICAL FIELD

The present invention relates to cemented carbide based cutting tools and inserts coated by a physical vapor deposition process. More specifically, the present invention relates to such cutting tools and inserts comprising ruthenium (Ru) as a component in the binder of the cemented carbide and methods of producing such cutting tools.

## BACKGROUND

Cemented carbide cutting tools and inserts (generally "cutting tools") are commonly employed in machining operations such as, for example, cutting, drilling, reaming, countersinking, counterboring, end milling, turning, grooving, threading, and tapping. The manufacturing process for cemented carbide cutting tools involves consolidating metallurgical powder (comprised of hard particles and a binder) to form a compact. The compact is then sintered to form a cylindrical tool blank having a solid monolithic construction. Subsequent to sintering, the tool blank may be appropriately machined to form a cutting edge or other features of the particular geometry desired on the cutting tool.

Cemented carbide tools are industrially important because of the combination of tensile strength, wear resistance, and toughness that is characteristic of these materials. The hard particles may be, for example, carbides, nitrides, borides, silicides, or oxides of elements within groups IVB through VIB of the periodic table. A common example is tungsten carbide. The binder may be a metal or metal alloy, typically cobalt, nickel, iron or alloys of these metals. The binder "cements" the hard particles within a continuous matrix interconnected in three dimensions.

The physical and chemical properties of cemented carbide materials depend in part on the individual components of the metallurgical powders used to produce the material. The properties of the cemented carbide materials are determined by, for example, the chemical composition of the hard particle, the average particle size and particle size distribution of the hard particles, the chemical composition of the binder, and the ratio of binder to hard particle in the substrate. By varying the components of the metallurgical powder, cutting tools, including cutting inserts, may be produced with unique properties matched to specific applications. Many cemented carbide cutting tools are prepared with in cobalt as the primary component of the binder, such cemented carbides may be particularly useful for machining today's mold and die materials. The weight percentage of cobalt as a binder in such cemented carbide cutting tools, typically, ranges from 5 to 20%.

Presently, a very limited amount of cemented carbide cutting tools have been prepared with ruthenium added to a cobalt binder. According to the reference book Modern Metal Cutting by Sandvik (ISBN-9197229930, 1996), typical substrates of cutting inserts are tungsten-based carbide (WC), cubic boron nitride (CBN), ceramic (Al2O3/Si3N4), titanium-based carbide or cermet (TiC/TiN), coronite (combined high speed steel and carbide) and polycrystalline diamond (PCD). According to the reference book World Directory and Handbook of Hardmetals and Hard Materials, 5th Edition (ISBN-0950899526), 1992, by K. J. Brookes, which collects carbide data from all major carbide cutting tool manufacturers worldwide, almost all tungsten carbides use cobalt as a binder with addition of a balance of some other alloying

2

compounds, such as TiC, TaC/NbC, to refine the properties of the substrate for particular applications.

Ruthenium (Ru) is a member of the platinum group and is a hard, lustrous, white metal that has a melting point of approximately 2,500° C. Ru does not tarnish at room temperatures, and may be used as an effective hardener, creating alloys that are extremely wear resistant. Stellram, an Allegheny Technologies Company located at 1 Teledyne Place, LaVergne, Tenn., USA 37086, has found that adding an amount of Ru into the cobalt binder continuous phase of a tungsten carbide substrate results in a cemented carbide cutting insert with improved resistance to thermal cracking and significant reduction of the propagation of cracks along and beyond the cutting insert edges and propagation of cracks into the substrate during use in machining processes. Such substrates may be called Ru-featured cemented carbides. The amount of Ru may be varied depending on the application, however, typical commercially available products include a concentration of ruthenium in the binder phase of cemented carbide substrates in the ranges of approximately 5% to 25%, by weight.

The cemented carbide substrates may additionally include a single or multiple layer coating to enhance cutting performance of tungsten carbide cutting inserts. Methods for coating cemented carbide cutting tools include chemical vapor deposition (CVD), physical vapor deposition (PVD) and diamond coating. Most often, CVD is used to apply the coating to cutting inserts due to the well-known advantages of CVD coatings in cutting tools. It is well known that PVD coatings are thinner than CVD coatings, thus provide the advantage of retaining sharp cutting edges.

As an example of PVD coating technologies, U.S. Pat. No. 6,352,627 B2 discloses a PVD coating method and device, which is based on magnetron sputtering techniques to produce refractory thin films or coats on cutting inserts, can deliver three consecutive voltage supplies during the coating operation, promoting an optimally enhanced ionization process that results in good coating adhesion on the substrate, even if the substrate surface provided is rough, for example because of grinding or jet abrasion treatment. Examples of some other PVD coating technologies are ion plating, arc discharge evaporation, ion beam assisted deposition and activated reactive evaporation.

Diamond compacts, or composite diamond compacts, may contain Ru as a significant element in the substrate material (no more than 20% by volume), such as in U.S. Pat. No. 6,620,375 B1, European Patent 1,077,783. Diamond compacts may also be called polycrystalline diamond (PCD) and may be manufactured under elevated temperature and pressure conditions. Diamond compacts are brittle in nature and thus they have to be bonded to a substrate that contains a binder, such as cobalt, iron or nickel, that may further include Ru. A diamond compact contains a polycrystalline mass of diamond particles presented in an amount of at least 80% by volume of the substrate. Diamond compacts are typically used in abrading or abrasive tools for sawing, milling or profile cutting of wood products.

Ru-featured cemented carbide cutting inserts are limited to either uncoated or CVD coated, that is to say, no PVD coatings have not been applied to Ru-featured carbide cutting inserts. For example, X500™, a commercial designation of Stellram's cutting tool products, is a multiple layer TiN—TiC—TiN CVD coated carbide cutting insert having Ru-featured substrate for the applications in machining of titanium alloys, nickel based alloys and ductile iron; and X44™ and X22™ (both commercial designations of Stellram's cutting tool products) are uncoated Ru-featured

A 17

US 7,244,519 B2

**3**

cemented carbide cutting inserts for applications in machining of steels and alloyed steels.

Different from conventional cobalt-based binder phase, in a Ru-featured cemented carbide substrate, cobalt (Co) and ruthenium (Ru) act as a mixed solvent during the sintering process. It is known that a cemented carbide cutting inserts with cobalt as a binder have a tendency for cobalt to penetrate through the surface of the compact and melt during the sintering process forming cobalt structures on the surface. This process is often referred to as cobalt capping. Cobalt caps on the substrate surface are randomly distributed, thus creating a crested and rough texture on the surface of the coating tool. The presence of Ru in the cobalt binder exaggerates the cobalt capping on cemented carbides, increasing the height and frequency of the cobalt caps. Even though some surface treatment techniques may be performed to reduce the cobalt capping effect to some degree, it is difficult to consistently produce a uniform surface on a sintered cemented carbide cutting inserts containing Ru in the binder. However, commercially available coated tools have compensated for the enhanced cobalt capping effects on the surface of the carbide cutting inserts including Ru-featured binders by applying a thick CVD coating with or without some pre-surface treatment methods like electropolishing, micro-blasting, wet blasting, compressed air blasting, etc. Thick CVD coating layers may cover up and reduce the overall impact of the cobalt capping. Additionally, the elevated CVD coating temperature (usually above 1500° C.) slightly melts the surface region of the cemented carbide and promotes better adhesion of the CVD coating layer to the surface. Thus, as of today, the Ru-featured carbide cutting inserts are limited only to uncoated and CVD coated inserts.

A PVD coating process involves a much lower coating temperature and, therefore, does not remelt the surface binder and tends to produce coatings that are not as well adhered to the carbide substrate surface. Additionally, thin PVD coatings cannot compensate for the enhanced cobalt capping effect. This is believed to be the reason that Ru-featured carbide cutting inserts are limited to uncoated or CVD coated cutting tools. The apparent difficulties of applying the low operation temperature based thin PVD coatings to guarantee consistent surface quality of coated carbide cutting inserts has not been considered feasible.

SUMMARY

The present invention relates to coated cutting tools comprising a substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium. The cutting tools may have at least one coating on at least a portion of the substrate, wherein the coating has the characteristics of a coating applied by physical vapor deposition. The binder may comprise at least one of iron, nickel, cobalt and alloys of such elements. The ruthenium concentration in the binder may be any concentration capable of providing the substrate with the desired properties. In certain embodiments, the concentration of ruthenium in the binder may be from 3% to 30%, by weight.

The cutting tool of the present invention comprises at least one coating having the characteristics of a coating applied by PVD of a metal carbide, a metal nitride, a metal boride and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table, such as but not limited to, at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (Al-

**4**

TiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide (Al$_2$O$_3$), titanium diboride (TiB$_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN).

The present invention also relates to methods of coating a substrate, comprising applying a coating on a substrate by physical vapor deposition, wherein the substrate comprises hard particles and a binder and the binder comprises ruthenium. The method may also include treating the substrate prior to coating the substrate, such as by electropolishing, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting. Additional coatings on the substrate may be applied by either by physical vapor deposition or chemical vapor deposition.

The reader will appreciate the foregoing details, as well as others, upon considering the following detailed description of certain non-limiting embodiments. The reader also may comprehend additional details of the present disclosure upon making and/or using the PVD coated cutting tools of the present disclosure.

BRIEF DESCRIPTION OF THE FIGURES

FIGS. 1A, 1B and 1C show an embodiment of a typical cutting insert, wherein FIG. 1A is a perspective view of the cutting insert, FIG. 1B is a top view of the cutting insert, and FIG. 1C is a side view of the cutting insert; and

FIG. 2 is a graph of the test results of comparative testing performed on embodiments of cutting inserts of the present invention and cutting inserts of the prior art.

DESCRIPTION OF EMBODIMENTS OF THE INVENTION

The present invention is directed to a cutting tool comprising a substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium. The substrate additionally comprises at least one coating on at least a portion of the substrate, wherein the coating has the characteristics of a coating applied by physical vapor deposition.

Embodiments include cutting tools in which the substrate may be any combination of hard particles and a binder, such as a cemented carbide. The binders of cemented carbides are typically at least one of iron, nickel, cobalt, and alloys of these metals. In embodiments of the present invention the binder additionally includes ruthenium. Ruthenium may be present in any quantity effective to have a beneficial effect on the properties of the cutting tool, such as a concentration of ruthenium in the binder from 3% and 30%, by weight. In certain embodiments, the concentration of ruthenium in the binder may be from 8% and 30%, by weight, from 8% and 20%, or even from 10% and 15%, by weight.

The binder also may contain, for example, elements such as W, Cr, Ti, Ta, V, Mo, Nb, Zr, Hf, and C up to the solubility limits of these elements in the binder. Additionally, the binder may contain up to 5 weight percent of elements such as Cu, Mn, Ag and Al. One skilled in the art will recognize that any or all of the constituents of the cemented carbide material may be introduced in elemental form, as compounds, and/or as master alloys.

The hard particles of substrates of the present invention may be at least one of metal carbides, nitrides, borides, suicides, oxides, and solid solutions thereof. More specifically, the hard particles may comprise at least one transition metal

**CERTIFICATE OF CORRECTION (continued)**                    Page 5 of 8

US 7,244,519 B2

5

carbide, nitride, boride, silicide and oxide selected from such compounds titanium, chromium, vanadium, zirconium, hafnium, tantalum, molybdenum, niobium, and tungsten or solid solutions thereof. As used herein, a cemented carbide includes substrates containing such hard particles in a binder. In a preferred cutting tool embodiment, the substrate comprises tungsten carbide in a binder of cobalt and ruthenium.

The coating applied by physical vapor deposition may be any coating capable of being applied by any physical deposition method. Typical, PVD processes include, but are not limited to, evaporation processes, activated reactive evaporation, arc discharge evaporation, laser ablation, ion plating, and sputtering, ion plating, and ion beam assisted deposition. The PVD coatings generated on Ru-featured cemented carbide cutting inserts can be characterized as thin, hard, homogeneously smooth, chemically stable and having a highly dense structure. PVD coatings may be further characterized by some unique differences in the microstructure and residual stresses of coatings deposited by PVD and CVD. PVD coating will have high residual compression stress and fine grains usually improve the hardness and toughness of PVD coatings. Embodiments of the coating applied by PVD may be at least one coating comprising at least one of a metal carbide, a metal nitride, a metal boride, and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table. For example, coating on the cutting tools of the present invention may be at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide (Al$_2$O$_3$), titanium diboride (TiB$_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN). In certain embodiments, the coating may be from 1 to 10 micrometers thick. Though it may be preferable in specific applications for the PVD applied coating to be from 2 to 6 micrometers thick.

The present invention also includes a method of coating a substrate. Embodiments of the method of the present invention include applying a coating on a cemented carbide substrate by PVD, wherein the cemented carbide substrate comprises hard particles and a binder and the binder comprises ruthenium. The PVD coated Ru-featured carbide cutting inserts provided in this invention may use any PVD coating technology. Such PVD coating applied to the substance comprising a binder including ruthenium produce coatings with enhanced hardness, reduced friction, chemical stability, wear resistance, thermal crack resistance and prolonged tool life. In embodiments, the coating may be applied to a thickness of from 1 to 10 micrometers (microns) or in certain embodiments a thickness of 2 to 6 micrometers may be desirable.

The method may include treating the substrate prior to coating the substrate. The treating prior to coating comprises at least one of electropolishing, shot peening, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting. Pre-coating surface treatments on any coated (CVD or PVD) carbide cutting inserts may reduce the cobalt capping effect of substrates. Examples of pre-coating surface treatments include wet blasting (U.S. Pat. Nos. 5,635,247 and 5,863,640), grinding (U.S. Pat. No. 6,217,992 B1), electropolishing (U.S. Pat. No. 5,665,431), brushing (U.S. Pat. No. 5,863,640), etc. Improper pre-coating surface treatment may lead to poor adhesion of PVD coats on the Ru-featured carbide substrate, thus resulting in premature failure of PVD

6

coatings. This is primarily due to the fact that the PVD coating layers are thin and the surface irregularities due to cobalt capping are more pronounced in a Ru-featured carbide substrate.

In certain embodiments, the method may comprise applying a second coating comprising of at least one of a metal carbide, a metal nitride, a metal boride and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table. Embodiments may comprise applying at least one coating selected from titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide (Al$_2$O$_3$), titanium diboride (TiB$_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN). The method may include applying the second and any additional coatings on the substrate by physical vapor deposition or chemical vapor deposition.

Surprisingly, a thin PVD coated Ru-featured carbide cutting tool demonstrated superior machining performance and exhibits satisfactory and consistent quality when compared to uncoated and CVD coated Ru-featured cutting tools. A PVD coating method typically may comprise all or some of the following units and steps:

a cleaning station for cleaning and drying process steps;

a pre-coating surface treating of the substrates, such as, but not limited to electropolishing, shot peening, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting, dust extraction and vacuum cleaning;

a quality management computer system for effective in-process quality control and documentation;

a batching station for handling the sequence and method for automatic loading parts; and

an optional post-coating surface treating, such as, but not limited to, blasting, shot peening, compressed air blasting, and brushing, to further improve the surface finish of the coated parts.

Certain embodiments of the cutting tools of the present invention may incorporate a step of treating the coating on the substrate to further improve the surface quality on the coated cutting inserts. Treating of the PVD coating of the cutting inserts of the present invention can further improve the surface quality of the coated layer. There are a number of methods for post treatment of a coated cutting insert surface, for example, shot peening, Japanese Patent 02254144, that describes a process using injection of small metal particles having a spherical grain shape with grain size in a range of 10-2000 mm. Another example of post-coating surface treatment is compressed-air blasting, European Patent 1,198,609 B1, that describes a process using an inorganic blasting agent, like Al$_2$O$_3$, with a very fine grain size ranging from 1 to 100 mm. Another example of post coating treatment is brushing, U.S. Pat. No. 6,638,609 B2, that describes a process using a nylon straw brush containing SiC grains. A gentle wet blasting may also be used as a post-coating surface treatment to create a smooth coating layer such as described in, U.S. Pat. No. 6,638,609 B2. In general, a fine surface treatment technique on PVD coated inserts can create smoothed and homogenized surface structure of PVD coatings on carbide cutting inserts.

A 19

7

The following examples of PVD coated cemented carbide tools and comparative machining test examples were conducted at different cutting conditions in order to evaluate advantages of cutting tools and methods according to the present disclosure.

EXAMPLES

Example 1

Uncoated Sample Tungsten Carbide Insert with 13 wt % Ruthenium in the Binder (X22 Substrate)

According to ISO standard on the substrate grade of cutting tool materials, X22 is close to a tough grade K30. Shown in Table 1 were the chemical compositions of the X22 metal powers. The major compositions in such powder materials include WC, Co and Ru. Some mechanical properties for the sintered tungsten carbides are also listed in Table 1.

TABLE 1

| Chemical Composition of the Substrate (wt. %) | | | Average Grain Size | Transverse Rupture Strength | Density | Hardness |
|---|---|---|---|---|---|---|
| WC | Co | Ru | (μm) | (N/μm²) | (g/cm³) | (HRA) |
| 90.8 | 8.0 | 1.20 | <1 | 3500 | 14.55 | 92.0 |

The metal powders in the weight percentages shown in Table 1 were mixed and then wet blended by a ball mill over a 72-hour period. After drying, the blended compositions were compressed into green sized bodies of the designed cutting insert under a pressure of 1-2 tons/cm². Then the compacted green bodies of the tungsten carbide cutting inserts were sintered, or heat-treated, in a furnace to close the pores in the green bodies and build up the bond between the hard particles to increase the strength and hardness. In particular, to effectively reduce the micro-porosity of the sintered substrate and ensure the consistent sintering quality of the X22™ Ru-featured carbide cutting inserts, the sinter-HIP, i.e. high-pressure sintering process, was used to introduce a pressure phase following the dewaxing, presintering and low-pressure nitrogen (N₂) sintering cycle. The sintering procedure X22™ Ru-featured carbide cutting inserts was performed using the following parameters during the major processing steps:

the dewaxing cycle started at room temperature with a ramping speed of 2° C./min until reaching a temperature of 400° C. and then held at this temperature for approximately 90 minutes;

the presintering cycle, which breaks down the oxides of Co, WC, Ti, Ta, Nb, etc., started with a ramping speed of 4° C./min until reaching a temperature of 1,200° C. and then held this temperature for an additional 60 minutes;

8

the low pressure nitrogen (N₂) gas was introduced at 1,350° C. during the temperature ramping from 1,200° C. to 1,400° C./1,450° C., i.e. sintering temperature, and then held at this sintering temperature 1,400° C./1,450° C. at a pressure of about 2 torrs for approximate 30 minutes;

the sinter-HIP process was then initiated while at the sintering temperature, i.e. 1,400° C./1450° C., during the process that argon (Ar) pressure was introduced and rose to 760 psi in 30 minutes, and then the pressure of the sinter-HIP process was held at this pressure for additional 30 minutes; and finally

the cooling cycle was carried out to let the heated green bodies of the X22™ carbide cutting inserts cool down to room temperature while inside the furnace.

The X22™ Ru-featured carbide cutting inserts produced by this process shrunk into the desired sintered size and became non-porous.

Example 2

PVD Coated Sample Tungsten Carbide Insert with 13 wt % Ruthenium in the Binder (X44 Substrate)

Metal powder materials in the weight percentages shown in Table 2 were prepared. The major compositions in such powder materials include WC, TiC, TaC, NbC, Co and Ru. Some mechanical properties for the sintered tungsten carbides are also listed in Table 2.

TABLE 2

| Chemical Compositions (weight %) | | | | | | Average Grain Size | Transverse Rupture Strength | Density | Hardness |
|---|---|---|---|---|---|---|---|---|---|
| WC | TiC | TaC | NbC | Co | Ru | (μm) | (N/μm²) | (g/cm³) | (HRA) |
| 67.2 | 10 | 7 | 2 | 12 | 1.80 | 1-2 | 2300 | 11.70 | 91.4 |

The metal powders with compositions as defined in Table 2 were mixed and then wet blended in a ball mill over a 72-hour period. After drying, the blended compositions were compressed into green sized bodies of the designed cutting insert under a pressure of 1-2 tons/cm². Then the compacted green bodies of the tungsten carbide cutting inserts were sintered, or heat-treated, in a furnace to close the pores in the green bodies and build up the bond between the hard particles to increase the strength and hardness. In particular, to effectively reduce the micro-porosity of the sintered substrate and ensure the consistent sintering quality of X44™ Ru-featured carbide cutting inserts, the sinter-HIP, i.e. high-pressure sintering process, was used to introduce a pressure phase following the dewaxing, presintering and vacuum sintering cycle. The sintering procedure for X44™ Ru-featured carbide cutting inserts was performed using the following parameters during the major processing steps:

the dewaxing cycle started at room temperature with a ramping speed of 2° C./min until reaching a temperature of 400° C. and then this temperature was held for an additional 90 minutes;

the presintering cycle, which breaks down the oxides of Co, WC, Ti, Ta, Nb, etc., started with a ramping speed of 4° C./min until the temperature reached 1,200° C. and then this temperature was held for approximately 60 minutes;

9

the vacuum cycle was then begun at a temperature of 1,350° C. during the temperature ramping process of the presintering cycle from 1,200° C. to 1,400° C./1,450° C., and then held at this sintering temperature for about 30 minutes;

the sinter-HIP process was then initiated while at the sintering temperature, i.e. approximately 1,400° C./1,450° C., during the process argon (Ar) gas was introduced and raising the pressure to 760 psi in 30 minutes, and then the sinter-HIP process held at this pressure for additional 30 minutes; and

the cooling cycle was conducted to let the heated green bodies of the X44™ carbide cutting inserts cool down to room temperature while inside the furnace.

Thus obtained X44™ Ru-featured carbide cutting inserts shrunk into the desired sintered size and became non-porous. Followed by the sintering process, the sintered tungsten carbide cutting inserts may be ground and edge-honed to become finished uncoated final products. Followed by the sintering process, the sintered tungsten carbide cutting inserts may be ground and edge-honed to be ready for pre-coating surface treatment and PVD coating operation.

The PVD coating process for this X44™ substrate is a single layer with coating material composition of aluminum-titanium-nitride or AlTiN. Prior to PVD coating, the surface of X44 carbide cutting inserts was blasted to provide better prepared surface. The PVD coating is around 4 microns in thickness on the surface of Ru-featured X44 carbide cutting inserts.

Example 3

Comparative Testing Results of High-Feed Milling Inserts:

A series of milling cutting inserts with the same insert shape and top geometry, described according to the ASTM Standard as XDLW120508SR-D, was selected as testing inserts to compare machining performance of different types of cutting inserts including the one with Ru-featured substrate provided in this invention. Based on ISO standard, the insert XDLW120508SR-D can be described as a special shape, as shown in FIGS. 1A, 1B and 1C, with 12 mm in diameter, 5.56 mm in thickness and single sided with a clearance angle of 15 degrees. Embodiments of the cutting inserts 10 have cutting edges 11, a top surface 12, side walls 13 and nose corners 14. Such cutting inserts are usually used for heavy milling operations with high feed rates. The detailed description of the testing inserts is given below in Table 3.

TABLE 3

Milling Inserts used in the Comparative Test

| Carbide Cutting Inserts | Ruthenium Composition (weight per cent) | Hardness (HCA) | Wt % of Ru in the binder phase |
|---|---|---|---|
| X44 with AlCrN PVD Coating | 1.8 | 91.4 | 13% |
| X44 with AlTiN PVD | 1.8 | 91.4 | 13% |
| T14A with AlCrN PVD | 0 | 91.3 | 0 |
| T14A with AlTiN PVD | 0 | 91.3 | 0 |
| X500 with TiN-TiC-TiN CVD Coating | 1.4 | 89.5 | 14.7% |

In Table 3, T14A is also a commercial designation of Stellram's cutting tool products. T14A is a carbide substrate without ruthenium included in the binder. The hardness of T14A substrate is very close to that of X44 substrate. The cutting conditions used in the test are shown as follows.

10

| Cutting speed: | Vc = 147 m/min |
| Feed rate: | Fz = 1 mm/Z |
| Depth of cut: | DCC = 2 mm |
| Work Material: | 4340 steel with a hardness of 375 HB |

The comparative test results are shown in FIG. 2. During the test, tool wear for each cutting insert was measured at a prescribed time interval until the wear reached a certain level indicating the tool failure. All the values in FIG. 2 were based on the average from the repeated machining tests.

It is clear from the results of this comparative test that the PVD coated Ru-featured carbide cutting inserts show the best cutting performance in terms of tool life, for example, a the PVD coated Ru-featured cutting insert 55% longer tool life than x44-AlCrN PVD coating with T14A-AlCrN PVD, and a 245% longer tool life than x44-AlTiN PVD coating with T14A-AlTiN PVD. The PVD coated Ru-featured cutting inserts provided in this invention outperform those having the same Ru-featured substrate but with CVD coatings as well as those with PVD coatings but without Ru-featured substrate.

It will be appreciated by those of ordinary skill in the art that the present invention provides certain tool parameters, conditions, and characteristics relative to specific compositions and method to the characteristics of Ru-featured cutting tools. These parameters, conditions, and characteristics provide an approach to improve properties, such as the tool life, of certain cutting insert. It will also be appreciated by those skilled in the art that changes could be made to the embodiments described herein without departing from the broad concept of the invention. It is understood, therefore, that this invention is not limited to the particular embodiments disclosed, but is intended to cover modifications that are within the spirit and scope of the invention, as defined by the appended claims.

The invention claimed is:

1. A cutting tool, comprising:
a cemented carbide substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium; and
at least one coating on at least a portion of the substrate, wherein the coating has the characteristics of a coating applied by physical vapor deposition.

2. The cutting tool of claim 1, wherein the wear resistant coating has a thickness of from 1 to 10 microns.

3. The cutting tool of claim 1, wherein the binder comprises at least one of iron, nickel and cobalt.

4. The cutting tool of claim 3, wherein the binder comprises cobalt.

5. The cutting tool of claim 4, wherein the concentration of ruthenium in the binder is from 3% and 30%, by weight.

6. The cutting tool of claim 5, wherein the concentration of ruthenium in the binder is from 8% and 30%, by weight.

7. The cutting tool of claim 6, wherein the concentration of ruthenium in the binder is from 8% and 20%, by weight.

8. The cutting tool of claim 7, wherein the concentration of ruthenium in the binder is from 10% and 15%, by weight.

9. The cutting tool of claim 1, wherein the at least one coating comprises at least one of a metal carbide, a metal nitride, a metal silicon and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table.

10. The method of claim 9, wherein the coating comprises at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium

**CERTIFICATE OF CORRECTION (continued)**          Page 8 of 8

US 7,244,519 B2

| 11 | 12 |

nitride (AlTiN), aluminum titanium nitride plus carbon (Al-TiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide (Al2O3), titanium diboride (TiB2), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN).

11. The cutting tool of claim 10, wherein the at least one coating has a thickness from 2 to 6 micrometers.

12. The cutting tool of claim 10, wherein the at least one coating comprises multiple layers.

13. The cutting tool of claim 1, wherein the hard particles are at least one of metal carbides, nitrides, borides, silicides, oxides and solid solutions thereof.

14. The cutting tool of claim 13, wherein the metal of the metal carbides, nitrides, borides, silicides, oxides, and solid solutions thereof is at least one of titanium, chromium, vanadium, zirconium, hafnium, tantablum, molybdenum, niobium and tungsten.

15. A method of coating a substrate, comprising: applying a coating on a cemented carbide substrate by physical vapor deposition, wherein the substrate comprises a hard particles and a binder and the binder comprises ruthenium.

16. The method of claim 15, wherein the wear resistant coating has a thickness from 2 to 6 microns.

17. The method of claim 15, wherein the binder is at least one of iron, nickel and cobalt.

18. The method of claim 17, wherein the binder is cobalt.

19. The method of claim 17, wherein the concentration of ruthenium in the binder is from 3% to 30%, by weight.

20. The method of claim 19, wherein the concentration of ruthenium in the binder is from 8% and 30%, by weight.

21. The method of claim 20, wherein the concentration of ruthenium in the binder from 8% and 20%, by weight.

22. The method of claim 21, wherein the concentration of ruthenium in the binder from 10% and 15%, by weight.

23. The method of claim 15, further comprising: treating the substrate prior to coating the substrate.

24. The method of claim 23, wherein treating the substrate prior to coating comprises at least one of electropolishing, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting.

25. The method of claim 15, wherein a coating is formed on at least a portion of the substrate, further comprising: treating the coating on the substrate.

26. The method of claim 25, wherein treating the coating on the substrate comprises at least one of shot peening, compressed air blasting, and brushing.

27. The method of claim 15, further comprising applying additional coatings on the substrate by physical vapor deposition.

28. The method of claim 15, further comprising applying additional coatings on the substrate by chemical vapor deposition.

29. The method of claim 15, wherein the coating comprises at least one of a metal carbide, a metal nitride, a metal silicon and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table.

30. The method of claim 29, wherein the coating comprises at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (Al-TiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+ WC/C), aluminum oxide (Al$_2$O$_3$), titanium diboride (TiB$_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN).

31. The method of claim 15, wherein the coating has a thickness from 1 to 10 micrometers.

* * * * *

*Reexam. Control No. 95/001,417*
*Patent Owner's Dkt. No. TMP-2060 RE*

*Patent Owner's Appellant's Brief*
*June 20, 2012*

## IX.    CLAIMS APPENDIX

1.    (*Amended*)    A cutting tool, comprising:

a cemented carbide substrate, wherein the substrate comprises hard particles and a binder, and the binder comprises ruthenium; and

at least one <u>physical vapor deposition</u> coating on at least a portion of the substrate[, wherein the coating has the characteristics of a coating applied by physical vapor deposition].


2.    (*Amended*)    The cutting tool of claim 1, wherein the [wear resistant] coating has a thickness of from 1 to 10 microns.


3.    The cutting tool of claim 1, wherein the binder comprises at least one of iron, nickel and cobalt.


4.    The cutting tool of claim 3, wherein the binder comprises cobalt.


5.    The cutting tool of claim 4, wherein the concentration of ruthenium in the binder is from 3% and 30%, by weight.


6.    The cutting tool of claim 5, wherein the concentration of ruthenium in the binder is from 8% and 30%, by weight.

7.    The cutting tool of claim 6, wherein the concentration of ruthenium in the binder is from 8% and 20%, by weight.

8.    The cutting tool of claim 7, wherein the concentration of ruthenium in the binder is from 10% and 15%, by weight.

9.    The cutting tool of claim 1, wherein the at least one coating comprises at least one of a metal carbide, a metal nitride, a metal silicon and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table.

10.    The cutting tool of claim 9, wherein the coating comprises at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide ($Al_2O_3$), titanium diboride ($TiB_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN).

11.    The cutting tool of claim 10, wherein the at least one coating has a thickness from 2 to 6 micrometers.

12.     The cutting tool of claim 10, wherein the at least one coating comprises multiple layers.

13.     The cutting tool of claim 1, wherein the hard particles are at least one of metal carbides, nitrides, borides, silicides, oxides and solid solutions thereof.

14.     The cutting tool of claim 13, wherein the metal of the metal carbides, nitrides, borides, silicides, oxides, and solid solutions thereof is at least one of titanium, chromium, vanadium, zirconium, hafnium, tantalum, molybdenum, niobium and tungsten.

15.     A method of coating a substrate, comprising:

applying a coating on a cemented carbide substrate by physical vapor deposition, wherein the substrate comprises hard particles and a binder and the binder comprises ruthenium.

16.     (*Amended*)     The method of claim 15, wherein the [wear resistant] coating has a thickness from 2 to 6 microns.

17.     (*Amended*)     The method of claim 15, wherein the binder <u>comprises</u> [is] at least one of iron, nickel and cobalt.

18.     (*Amended*)     The method of claim 17, wherein the binder <u>comprises</u> [is] cobalt.

19.    The method of claim 17, wherein the concentration of ruthenium in the binder is from 3% to 30%, by weight.

20.    The method of claim 19, wherein the concentration of ruthenium in the binder is from 8% and 30%, by weight.

21.    The method of claim 20, wherein the concentration of ruthenium in the binder from 8% and 20%, by weight.

22.    The method of claim 21, wherein the concentration of ruthenium in the binder from 10% and 15%, by weight.

23.    The method of claim 15, further comprising:

treating the substrate prior to coating the substrate.

24.    The method of claim 23, wherein treating the substrate prior to coating comprises at least one of electropolishing, microblasting, wet blasting, grinding, brushing, jet abrading and compressed air blasting.

25.    The method of claim 15, wherein a coating is formed on at least a portion of the substrate, further comprising:

treating the coating on the substrate.

Reexam. Control No. 95/001,417                                    Patent Owner's Appellant's Brief
Patent Owner's Dkt. No. TMP-2060 RE                                              June 20, 2012

26.    The method of claim 25, wherein treating the coating on the substrate comprises at least one of shot peening, compressed air blasting, and brushing.

27.    The method of claim 15, further comprising applying additional coatings on the substrate by physical vapor deposition.

28.    The method of claim 15, further comprising applying additional coatings on the substrate by chemical vapor deposition.

29.    The method of claim 15, wherein the coating comprises at least one of a metal carbide, a metal nitride, a metal silicon and a metal oxide of a metal selected from groups IIIA, IVB, VB, and VIB of the periodic table.

30.    The method of claim 29, wherein the coating comprises at least one of titanium nitride (TiN), titanium carbonitride (TiCN), titanium aluminum nitride (TiAlN), titanium aluminum nitride plus carbon (TiAlN+C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), titanium aluminum nitride plus tungsten carbide/carbon (TiAlN+WC/C), aluminum titanium nitride (AlTiN), aluminum titanium nitride plus carbon (AlTiN+C), aluminum titanium nitride plus tungsten carbide/carbon (AlTiN+WC/C), aluminum oxide ($Al_2O_3$), titanium diboride ($TiB_2$), tungsten carbide carbon (WC/C), chromium nitride (CrN) and aluminum chromium nitride (AlCrN).

*Reexam. Control No. 95/001,417*
*Patent Owner's Dkt. No. TMP-2060 RE*

*Patent Owner's Appellant's Brief*
*June 20, 2012*

31.    The method of claim 15, wherein the coating has a thickness from 1 to 10 micrometers.

33.    The cutting tool of claim 1, wherein the binder does not comprise chromium.

34.    The method of claim 15, wherein the binder does not comprise chromium.

35.    The cutting tool of claim 1, wherein the cutting tool does not comprise a diamond coating.

36.    The method of claim 15, wherein the method does not comprise applying a diamond coating to the substrate.

37.    The cutting tool of claim 1, wherein the binder does not comprise chromium, and wherein the cutting tool does not comprise a diamond coating.

38.    The method of claim 15, wherein the binder does not comprise chromium, and wherein the method does not comprise applying a diamond coating to the substrate.

39.    The cutting tool of claim 1, wherein the binder consists of ruthenium, cobalt, and at least one of iron and nickel.

40.    The method of claim 15, wherein the binder consists of ruthenium, cobalt, and at least one of iron and nickel.

41.    The cutting tool of claim 1, wherein the binder consists of ruthenium and cobalt.

42.    The method of claim 15, wherein the binder consists of ruthenium and cobalt.

43.    The cutting tool of claim 1, wherein the cemented carbide substrate consists of:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide particles; and

the binder, wherein the binder consists of ruthenium, cobalt, and at least one of iron and nickel.

44.    The method of claim 15, wherein the cemented carbide substrate consists of:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide particles; and

the binder, wherein the binder consists of ruthenium, cobalt, and at least one of iron and nickel.

Reexam. Control No. 95/001,417
Patent Owner's Dkt. No. TMP-2060 RE

Patent Owner's Appellant's Brief
June 20, 2012

45.    The cutting tool of claim 1, wherein the cemented carbide substrate comprises:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide

particles; and

the binder, wherein the binder comprises ruthenium and cobalt.


46.    The method of claim 15, wherein the cemented carbide substrate comprises:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide

particles; and

the binder, wherein the binder comprises ruthenium and cobalt.


47.    The cutting tool of claim 1, wherein the cemented carbide substrate consists of:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide

particles; and

the binder, wherein the binder consists of ruthenium and cobalt.


48.    The method of claim 15, wherein the cemented carbide substrate consists of:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide

particles; and

the binder, wherein the binder consists of ruthenium and cobalt.

49.    The cutting tool of claim 1, wherein the physical vapor deposition coating comprises titanium aluminum nitride (TiAlN).

50.    The method of claim 15, wherein the physical vapor deposition coating comprises titanium aluminum nitride (TiAlN).

51.    The cutting tool of claim 1, wherein the cutting tool consists of:

a cemented carbide substrate, wherein the cemented carbide substrate consists of

tungsten carbide particles,

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide particles, and

a binder, wherein the binder consists of ruthenium, cobalt, and at least one of iron and nickel, wherein the concentration of ruthenium in the binder is from 8% to 20% by weight; and

a titanium aluminum nitride coating on at least a portion of the cemented carbide substrate, wherein the titanium aluminum nitride coating is applied directly to the cemented carbide substrate by physical vapor deposition, and wherein the titanium aluminum nitride coating has a thickness of 2 to 6 micrometers.

52.    The method of claim 15, wherein the cemented carbide substrate consists of:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide

particles; and

the binder, wherein the binder consists of ruthenium, cobalt, and at least one of iron and

nickel; and

wherein the physical vapor deposition coating comprises titanium aluminum nitride

(TiAlN).

56.    The method of claim 15, further comprising wet blasting the cemented carbide

substrate before applying the coating, wherein the wet blasting reduces cobalt capping on the

cemented carbide substrate.

57.    The method of claim 15, further comprising microblasting the cemented carbide

substrate before applying the coating, wherein the microblasting reduces cobalt capping on the

cemented carbide substrate.

58.    The method of claim 15, wherein the method does not comprise electropolishing

the substrate before applying the coating.

59.    The method of claim 15, further comprising at least one of wet blasting and

microblasting the cemented carbide substrate before applying the coating, wherein the method

does not comprise electropolishing the substrate before applying the coating.

*Reexam. Control No. 95/001,417*
*Patent Owner's Dkt. No. TMP-2060 RE*

*Patent Owner's Appellant's Brief*
*June 20, 2012*

83.   A method of coating a substrate, comprising:

treating a cemented carbide substrate, wherein the cemented carbide substrate comprises tungsten carbide particles and a binder, and the binder comprises ruthenium and cobalt; and

applying a physical vapor deposition coating directly on the cemented carbide substrate;

wherein the treating reduces cobalt capping on the cemented carbide substrate.


84.   The method of claim 83, wherein the binder does not comprise chromium, and wherein the method does not comprise applying a diamond coating to the substrate.


85.   The method of claim 83, wherein the method does not comprise electropolishing the substrate before applying the coating.


86.   The method of claim 83, wherein treating a cemented carbide substrate comprises at least one of wet blasting and microblasting a cemented carbide substrate.


87.   The method of claim 83, wherein the cemented carbide substrate consists of:

tungsten carbide particles;

at least one of titanium carbide particles, tantalum carbide particles, and niobium carbide particles; and

a binder, wherein the binder consists of ruthenium, iron, nickel, and cobalt, and wherein the concentration of ruthenium in the binder is from 8% to 20% by weight; and

wherein the physical vapor deposition coating consists of titanium aluminum nitride.

Reexam. Control No. 95/001,417                                    Patent Owner's Appellant's Brief
Patent Owner's Dkt. No. TMP-2060 RE                                              June 20, 2012

88.    The method of claim 83, wherein the method comprises:

wet blasting a cemented carbide substrate, wherein the cemented carbide substrate

consists of tungsten carbide particles, niobium carbide particles, and a binder, and the binder

consists of ruthenium, iron, nickel, and cobalt, wherein the concentration of ruthenium in the

binder is from 8% to 20% by weight; and

applying a titanium aluminum nitride coating directly on the cemented carbide substrate

by physical vapor deposition, wherein the titanium aluminum nitride coating has a thickness of 2

to 6 micrometers;

wherein an interface between the cemented carbide substrate and the titanium aluminum

nitride coating is characterized by reduced cobalt capping.


89.    A cutting tool, comprising:

a mechanically-ablated, cemented carbide substrate, wherein the substrate comprises hard

particles and a binder, and the binder comprises ruthenium; and

at least one PVD coating on at least a portion of the mechanically-ablated, cemented

carbide substrate.


90.    The cutting tool of claim 89, wherein the mechanically-ablated cemented carbide

substrate comprises a wet-blasted cemented carbide substrate.

93.    A cutting tool, consisting of:

a wet-blasted cemented carbide substrate, wherein the cemented carbide substrate

consists of

     tungsten carbide particles,

          at least one of titanium carbide particles, tantalum carbide particles, and niobium

carbide particles, and

          a binder, wherein the binder consists of ruthenium, cobalt, iron, and nickel, and

wherein the concentration of ruthenium in the binder is from 8% to 20% by weight; and

     a titanium aluminum nitride coating on at least a portion of the cemented carbide

substrate, wherein the titanium aluminum nitride coating is applied directly to the cemented

carbide substrate by physical vapor deposition, and wherein the titanium aluminum nitride

coating has a thickness of 2 to 6 micrometers.